727 A.2d 51

ROSEMARIE HABICK, PLAINTIFF–APPELLANT, v. LIBERTY
MUTUAL FIRE INSURANCE COMPANY, DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 15, 1998—Decided April 1, 1999.

Before Judges STERN, BRAITHWAITE and WECKER.

*John F. Murano*, attorney for appellant.

*Walter F. Skrod*, attorney for respondent (*Jonathan R. Westpy*, on the brief).

The opinion of the court was delivered by ·

WECKER, J.A.D.

Plaintiff, Rosemarie Habick, appeals from Law Division orders denying her application to vacate or modify a PIP arbitrator's determination that certain medical treatment was not required as a result of accident-related injuries, *see N.J.S.A.* 39:6A–4, and declaring that plaintiff would be bound by that ruling in her pending UM arbitration arising out of the same accident.[1] We

---

[1] Defendant apparently never moved to confirm the award, and the record reveals no judgment confirming the award. Both parties have briefed and submitted this appeal on the apparent assumption that the Law Division orders appealed from were the equivalent of a confirmation of the arbitration award. We therefore need not address the issues addressed by *Policeman's Benev. Ass'n*

conclude that the Law Division Judge erred only in denying modification of the award to exclude issues not before the arbitrator, and we otherwise affirm the orders appealed from.

After plaintiff's 1992 automobile accident, her PIP carrier, Liberty Mutual Fire Insurance Company, paid for treatment of a knee injury and a TMJ condition through 1995 and approved arthroscopic surgery on her right knee. When plaintiff's treating physician later recommended knee replacement in lieu of the arthroscopic procedure, Liberty denied payment on the basis of its own medical examiner's report. Plaintiff then filed for arbitration of her PIP claim, as permitted by *N.J.S.A.* 39:6A–5h. Because the other driver was uninsured, plaintiff also filed for uninsured motorist coverage, and her UM arbitration was pending at the time she sought relief from the PIP arbitrator's decision.[2] The UM arbitrators adjourned any hearing pending the final outcome of the PIP arbitration.

The PIP arbitrator denied plaintiff's claim for further TMJ treatment as well as the knee replacement surgery, finding that neither treatment was warranted by a condition caused by the accident. In denying plaintiff's demand, the arbitrator concluded:

> It is my finding that Claimant sustained minor soft tissue injuries as a result of the underlying motor vehicle accident. This finding is based upon the information contained in the emergency room record as well as the information set forth in all medical records and medical examinations conducted by all doctors involved.
>
> I believe that Claimant has pre-existing medical conditions that were not aggravated by the minor injuries she sustained in the October 2, 1992 accident.
>
> I find the reports of [defendant's orthopedic medicine expert] credible and I find the reports and testimony of [defendant's dental medicine expert] credible.

---

*v. Borough of N. Haledon*, 305 *N.J.Super.* 454, 703 *A.*2d 1 (App.Div.1997), which are not raised by either party on this appeal.

[2] Although plaintiff's demand for arbitration included a claim for left knee surgery as well as right knee replacement, plaintiff does not contest the arbitrator's decision with respect to treatment for her left knee, or the conclusion that the accident did not cause an aggravation of preexisting osteoarthritis in her left knee.

> Frankly, it is difficult for me to attribute the requirement for bi-lateral total knee replacement to the underlying accident in light of the emergency room diagnosis of right knee contusion and the complete absence of complaints or objective evidence of left knee injury.
>
> Additionally, Claimant had what I would describe as a significant pre-existing dental history. I find that a lapse of eleven months between accident and diagnosis of TMJ [is] supportive of the contention that had significant trauma occurred at the time of the accident a diagnosis would have and indeed should have been made much earlier.
>
> For these reasons, the claim for benefits is denied.

In response to Habick's request for clarification, based upon Liberty's prior payments for treatment of knee and TMJ conditions and her own doctor's report that Liberty had approved arthroscopic surgery on her right knee, the arbitrator responded in writing that he found "no evidence that Liberty Mutual in fact authorized arthroscopic surgery to claimant's right knee." The PIP arbitrator's award does not refer to the pending UM arbitration.

Habick, obviously recognizing the potentially binding effect of the PIP arbitration upon her UM claim, filed a verified complaint in the Law Division seeking a judgment either vacating the award or, in the alternative, modifying the award to limit its scope to the issues submitted, and "to reflect that it be without prejudice to any claim plaintiff may have outside the scope of the PIP arbitration proceedings."

There is no dispute that plaintiff suffered from osteoarthritis of both knees prior to the accident. Two factual issues were submitted to and decided by the PIP arbitrator, each of which is potentially before the UM arbitrators. The first is whether the accident aggravated the condition of plaintiff's right knee, thereby necessitating knee replacement surgery, or whether the deterioration of plaintiff's osteoarthritic knee instead reflected the natural progression of the disease and was unrelated to the accident. The second factual issue decided by the PIP arbitrator that is potentially before the UM arbitrator(s) is whether this accident was a proximate cause of Habick's continuing TMJ symptoms. The PIP arbitrator ruled that it was not.

In denying relief to Habick from the PIP arbitration award, the Law Division Judge wrote:

> the arbitrator found that Liberty was not responsible for any *additional* treatment.... [T]he arbitrator gave a factual basis for reaching his conclusion. It is based on those findings that the plaintiff seeks to overturn the arbitrator's award.
>
> The court has reviewed the submissions of counsel and the findings of the arbitrator and can find no evidence that this arbitrator in the instant case exceeded his power. There is nothing in the record before the court to reflect that [the arbitrator], who had the benefit of the testimony of the plaintiff and her witnesses as well as all relevant medical evidence, made a finding that was with a gross, unmistakable or manifest disregard to the applicable law of this state.
>
> [emphasis added.]

The judge also denied plaintiff's motion for reconsideration, writing with respect to the binding effect of the PIP arbitration:

> As to whether the findings of [the PIP arbitrator] are binding on the U.M. arbitrator, the court finds in the affirmative. The plaintiff in her P.I.P. arbitration submitted all facets of her case most favorable to her position for the arbitrator's consideration. A finding was made by the arbitrator and since there are no new facts to be considered by the U.M. arbitrator, the decision of [the arbitrator] is binding on all issues he ruled on in presenting his findings.

## I.

■ There are two separate questions before us. The first question is whether the judge erred in refusing to vacate or modify the arbitration award. We are aware of no reported case addressing the standard of review applicable to a motion to vacate a PIP arbitration award (or opposition to confirming that award).

There can be little doubt that arbitration is a favored means of dispute resolution. *See, e.g., United States Auto. Ass'n v. Turck,* 156 *N.J.* 480, 486, 721 *A.*2d 1 (1998). The Arbitration Act, *N.J.S.A.* 2A:24–1 *et seq.,* enacted in 1923, provides narrow grounds for vacating an arbitration award:

> The court shall vacate the award in any of the following cases:
>
> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear

evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

    d.   Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

*[N.J.S.A. 2A:24–8]*

Neither party to this appeal suggests that the Act is inapplicable to PIP arbitration, which was enacted as part of the 1983 amendments to the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 *et seq. See L.* 1983 c. 362, § 8, amending *N.J.S.A.* 39:6A–5c (now § 5h).

Permissible grounds for modifying an arbitration award are set forth in *N.J.S.A.* 2A:24–9. They include circumstances "Where the arbitrators awarded upon a matter not submitted to them unless it affects the merit of the decision upon the matter submitted; . . . ." *Id.*, § b. In that event, "The court shall modify and correct the award, to effect the intent thereof and promote justice between the parties." *Id.*

A majority of the Supreme Court further narrowed the scope of review under the Arbitration Act with respect to an award reached by voluntary contractual arbitration among private parties. *Tretina Printing, Inc. v. Fitzpatrick and Assoc., Inc.*, 135 *N.J.* 349, 358, 640 *A.*2d 788 (1994) (4–3 decision) (quoting *Perini Corp. v. Greate Bay Hotel & Casino Inc.*, 129 *N.J.* 479, 548–49, 610 *A.*2d 364 (1992) (Wilentz, J. concurring)):

Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. [They] can be corrected or modified only for very specifically defined mistakes as set forth in [*N.J.S.A.* 2A:24–9]. *If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award.* [emphasis added.]

There is no allegation of "fraud, corruption, or similar wrongdoing on the part of" this arbitrator. Later in this opinion we will address the matter not submitted to the arbitrator.

The *Tretina* majority carefully circumscribed the exceptions on policy grounds that would permit a broader review of private, voluntary arbitration:

> Finally, ... we add our recognition that in rare circumstances a court may vacate an arbitration award for public-policy reasons. For example, in *Faherty v. Faherty*, 97 *N.J.* 99, 477 *A.2d* 1257 (1984), we held that "whenever the validity of an arbitration award affecting child support is questioned on the grounds that it does not provide adequate protection for the child, the trial court should conduct a special review of the award." *Id.* at 109, 477 *A.2d* 1257. That heightened judicial scrutiny is required because of the courts' traditional role as *parens patria. Id.* at 111, 477 *A.2d* 1257.
>
> [135 *N.J.* at 364, 640 *A.2d* 788.]

PIP arbitration justifies neither a public policy exception nor one based on the courts' *parens patria* responsibility. The Court recognized that public sector arbitration requires a broader standard of review.

> Similarly, in a public-sector arbitration setting, a court can properly vacate an award because of a mistake of law. *Communications Workers v. Monmouth County Bd. of Social Servs.*, 96 *N.J.* 442, 476 *A.2d* 777 (1984). That exception is necessary because public policy demands that a public-sector arbitrator, who must consider the effect of a decision on the public interest and welfare, issue a decision in accordance with the law. *Kearny PBA Local # 21 v. Town of Kearny*, 81 *N.J.* 208, 217, 405 *A.2d* 393 (1979).
>
> [*Id.* at 364–65, 640 *A.2d* 788.]

While theorizing that PIP arbitration is a "hybrid" between public sector arbitration and private arbitration, plaintiff nevertheless asks us to apply the broadest standard applicable to certain public sector arbitration. *See Hillsdale P.B.A. Local 207 v. Borough of Hillsdale*, 137 *N.J.* 71, 82, 644 *A.2d* 564 (1994); *New Jersey State P.B.A., Local 29 v. Town of Irvington*, 80 *N.J.* 271, 294, 403 *A.2d* 473 (1979); *Division 540, Amalgamated Transit Union v. Mercer Co. Improvement Auth.*, 76 *N.J.* 245, 253–54, 386 *A.2d* 1290 (1978). In effect, plaintiff seeks a review standard comparable to the substantial-credible-evidence test [3] applicable to judicial or to administrative agency fact findings. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 *N.J.* 474,

---

[3] Plaintiff relies on an unreported decision of this court applying the substantial-credible-evidence standard to a PIP carrier's application to vacate an arbitration award. For reasons expressed in this opinion, we decline to use that standard.

484, 323 *A.*2d 495 (1974); and *see e.g., In re Musick,* 143 *N.J.* 206, 216, 670 *A.*2d 11 (1996).

Plaintiff's reliance upon a comparison between PIP arbitration and public sector arbitration of any kind is misplaced. Parties may be subject to mandatory public-sector arbitration either to reach a collective bargaining agreement involving a public entity— so-called "interest arbitration," *e.g., Division 540, supra,* 76 *N.J.* 245, 386 *A.*2d 1290—or to resolve certain labor disputes arising under such a collective bargaining agreement—"grievance arbitration," *e.g., Scotch Plains–Fanwood Bd. of Educ. v. Scotch Plains– Fanwood Educ. Ass'n,* 139 *N.J.* 141, 651 *A.*2d 1018 (1995).[4] The substantial-credible-evidence standard of review, applicable only to interest arbitration, has its rationale in entirely different circumstances than those underlying PIP arbitration. *See Division 540 supra,* 76 *N.J.* at 253–54, 386 *A.*2d 1290:

> The statute subjects the development Authority to compulsory and binding arbitration. Because it is compulsory, principles of fairness, perhaps even due process, require that judicial review be available to ensure that the award is not arbitrary or capricious and that the arbitrator has not abused the power and authority delegated to him.
>
> Also, because the arbitration process is imposed by law, the judicial oversight available should be more extensive than the limited judicial review had under *N.J.S.A.* 2A:24–8 to parties who voluntarily agree to submit their dispute to binding arbitration. *See Daly v. Komline–Sanderson Engineering Corp.,* 40 *N.J.* 175, 178, 191 *A.*2d 37 (1963). We conclude that when, as here, the arbitration process is compulsory, the judicial review should extend to consideration of whether the award is supported by substantial credible evidence present in the record. This is the test normally applied to the review of administrative agency decisions and is particularly appropriate here. *See City of Amsterdam v. Helsby,*

---

4 "Interest" arbitration ... involves the submission of a dispute concerning the terms of a new contract to an arbitrator, who selects those terms and thus in effect writes the parties' collective agreement. It is to be distinguished from "grievance" arbitration, which is a method of resolving differences concerning the interpretation, application, or violation of an already existing contract. [*New Jersey State P.B.A., Local 29,* 80 *N.J.* at 284, 403 *A.*2d 473 (citations omitted) (explaining history and scope of public sector interest arbitration).]

The term "interest" arbitration may arise from the first statutory factor the arbitrators must consider in resolving an impasse in a public contract negotiation, *i.e.,* "the interest and welfare of the public." *See N.J.S.A.* 34:13A–16g(1).

*supra,* 37 *N.Y.*2d at 38–41, 371 *N.Y.S.2d* at 417, 332 *N.E.*2d at 300–302 (Fuchsberg, J., concurring).

[footnote omitted.]

The standard of review of the public sector arbitrator's decision in either interest or grievance arbitration is broader than it would be for private, voluntary arbitration under *Tretina.* In grievance arbitration, the award may not extend beyond the scope of the arbitrator's authority, nor be inconsistent with state law or policy. *See Scotch Plains–Fanwood,* 139 *N.J.* at 149–50, 651 *A.*2d 1018; *Communications Workers of America, Local 1087 v. Monmouth Co. Bd. of Soc. Servs.,* 96 *N.J.* 442, 453, 476 *A.*2d 777 (1984). Only in interest arbitration must the award also be supported by substantial credible evidence. *See Hillsdale P.B.A. Local 207 v. Borough of Hillsdale,* 137 *N.J.* at 82, 644 *A.*2d 564; *New Jersey State P.B.A., Local 29 v. Town of Irvington,* 80 *N.J.* at 293–94, 403 *A.*2d 473; *Division 540.* Plaintiff fails to note the distinction.

The rationale for the broader public sector standards of review is essentially bottomed on fairness to the parties, for whom arbitration of collective bargaining agreements is compulsory, *e.g., New Jersey State P.B.A., Local 29,* 80 *N.J.* at 294, 403 *A.*2d 473; the public's interest in avoiding violations of law or public policy; and protection of the public welfare. *E.g., In re Paterson Police P.B.A. Local No. 1 v. City of Paterson,* 87 *N.J.* 78, 95, 432 *A.*2d 847 (1981); *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 217, 405 *A.*2d 393 (1979); *Division 540,* 76 *N.J.* at 252–54, 386 *A.*2d 1290. Plaintiff would have us conclude that the same rationale requires a broader standard of review when an insuror seeks to vacate or modify a PIP arbitration award.

Plaintiff reasons that because only the insured, and not the insuror, can choose to arbitrate a PIP claim, the insuror should not be limited by the *Tretina* standard. From that proposition, plaintiff argues that it would be unfair and contrary to the policy of encouraging PIP arbitration to apply a stricter standard of review to the insured than to the insuror; therefore a broader standard of review should apply to all PIP arbitration.

We assume that the same standard of review should apply irrespective of which party is dissatisfied with a PIP arbitration's outcome, *cf. Division 540, supra,* 76 *N.J.* at 253 n. 4, 386 *A.*2d 1290. Because PIP arbitration elected by the insured becomes mandatory for the carrier, plaintiff would have us view the carrier's challenge to an arbitration award as if it were the result of mandatory public sector arbitration. While that contention may have some facial validity, closer examination leads us to a different view. We reject plaintiff's premise that it would be unfair to subject the insuror to the limited *Tretina* standard of review.

Although the terms of PIP coverage, including the insured's right to elect arbitration, are mandated by statute, the carrier's participation in this market, circumscribed as it is by state law, is nevertheless voluntary. The PIP carrier has entered into a contract with its insured. Moreover, unlike the insured, whose interest lies in the outcome of a single PIP arbitration, the carrier's interest lies more in a predictable, consistent procedure and scope of review applicable across the board to all of the PIP arbitrations it faces. While a broader standard might allow the carrier to prevail in vacating certain arbitration awards it deems erroneous, such a standard would also jeopardize the finality of those awards the carrier deems favorable.

Additionally, to allow a substantial-credible-evidence test of a PIP award would require a verbatim record, with the attendant expense and delay that PIP arbitration is intended to avoid. The net result would be to defeat the overall purpose of, and public policy behind, PIP arbitration: to provide a prompt, efficient, and inexpensive means of dispute resolution that will minimize and not maximize resort to the courts. We therefore see no fundamental unfairness in holding both sides to the limited scope of review mandated by *Tretina.* We are satisfied that PIP arbitration warrants no different standard. Thus to the extent that plaintiff's contention is that the arbitrator was wrong because he believed the wrong expert, her appeal from the confirmed award is without merit.

■ However, we agree with plaintiff that the Law Division Judge erred in failing to recognize that the arbitrator's award went beyond the scope of his authority and therefore warrants modification under *N.J.S.A.* 2A:24–9b and *Tretina Printing*, 135 *N.J.* at 358, 640 *A.*2d 788. We need look no further than Liberty's brief on this appeal to be satisfied that "[t]he need and/or approval for [arthroscopic] surgery on plaintiff's right knee was not an issue at the time of arbitration and not considered by the arbitrator . . .," and because Habick instead sought benefits for a total knee replacement, "[t]he issue therefore presented to the arbitrator . . . was whether the total knee replacement was a reasonable, necessary medical expense related to personal injuries sustained in the motor vehicle accident and therefore compensable by PIP, or whether it was a result of a pre-existing medical condition or circumstance unrelated to the auto accident."

With respect to treatment for a TMJ disorder, Liberty's brief described the conflicting expert opinions with respect to a causal relationship between the accident and Habick's TMJ condition: "[a]t issue at the time of [PIP] arbitration and for [the arbitrator] to determine was whether this treatment received subsequent to the termination [of PIP benefits] was reasonable, necessary and causally related to the auto-accident." Liberty itself does not claim that the arbitrator determined that plaintiff suffered no right knee injury or that she suffered no TMJ injury as a result of this accident, but only that he found no causal relationship between the accident and the conditions for which Habick sought (1) TMJ treatment after the PIP cut-off and (2) total knee replacement rather than arthroscopic surgery. Indeed, at the time the claims were submitted to arbitration, no previously incurred medical bills collectible under PIP were outstanding or in dispute. Therefore, to the extent the arbitrator's award purported to make findings with respect to issues other than the total knee replacement procedure and continued TMJ treatment after the cut-off date, the award must be modified to exclude those findings as beyond the scope of the arbitrator's authority.

## II.

Because we affirm the order effectively confirming the arbitration award as modified, we address the second issue raised by this appeal: whether the PIP award bars relitigation of medical causation in plaintiff's anticipated UM arbitration. Had plaintiff sought a determination of PIP benefits in a non-jury proceeding before the court, as permitted by *N.J.S.A.* 39:6A–5(c), rather than opting for PIP arbitration, she would be bound in a subsequent suit against a third-party tortfeasor by a final judgment dismissing her claim for failure to prove that injuries caused by the accident warranted the treatment requested. *See Kozlowski v. Smith,* 193 *N.J.Super.* 672, 674–75, 475 *A.*2d 663 (App.Div.1984) (prior PIP litigation denying benefits after finding no medical causation bars relitigation of causation in subsequent personal injury action.) We see no reason why prior PIP litigation should be any less binding in a subsequent UM arbitration than it would be in a subsequent personal injury lawsuit.

We next consider whether the PIP arbitration award should have the same preclusive effect as a prior judicial determination, and therefore bars the plaintiff from relitigating causation. In *Kozlowski,* as here, the party to be bound by the prior decision had a full opportunity to be heard in the prior proceeding and the incentive to make her case. Contrariwise, where a UM arbitrator hearing a passenger's claim allocated fault between the uninsured driver and an insured driver who was unrepresented in the arbitration, the arbitration award could not bind the unrepresented, insured driver in subsequent litigation. *See Riccio v. Prudential Property and Cas. Ins. Co.,* 108 *N.J.* 493, 498, 531 *A.*2d 717 (1987). The key factor is the opportunity once to be heard fully. *See also Nogue v. Estate of Santiago,* 224 *N.J.Super.* 383, 540 *A.*2d 889 (App.Div.1988). In *Nogue,* the UM arbitrator found, in claims brought by a passenger and the Estate of the driver, that a phantom vehicle and not the insured driver was entirely responsible for the accident. We later held that the arbitrator's finding did not bar the passenger's subsequent suit against the Estate of

the insured driver, because "there was little, if any, incentive for any party to the arbitration to urge or deny [the insured driver's] liability." *Id.* at 385–86, 540 *A.*2d 889. We nevertheless recognized that "in appropriate circumstances an arbitration award can have a *res judicata* or collateral estoppel effect in subsequent litigation." *Id.* at 385–86, 540 *A.*2d 889, citing *Restatement (Second) of Judgments,* § 84 (1982).

We look to the underlying principles of collateral estoppel, which the motion judge invoked to declare that the PIP arbitrator's determination with respect to causation would bind plaintiff in her anticipated UM arbitration. As Habick correctly contends, New Jersey follows the *Restatement (Second) of Judgments* respecting collateral estoppel. *See, e.g., Hernandez v. Region Nine Hous. Corp.,* 146 *N.J.* 645, 659–61, 684 *A.*2d 1385 (1996); *Zirger v. General Accident Ins. Co.,* 144 *N.J.* 327, 338, 676 *A.*2d 1065 (1996). The *Restatement* sets forth both general guidelines and those specific to various proceedings, including arbitration. Contrary to Habick's contentions, however, the principles of the *Restatement* support the conclusion that the confirmed PIP arbitration award is binding upon plaintiff in her UM claim. That conclusion is consistent with the Supreme Court's reasoning in *Zirger v. General Accident Ins. Co., supra,* 144 *N.J.* at 337–38, 676 *A.*2d 1065, holding a compulsory arbitration clause in the UM policy inapplicable where the insured's claim previously had been tried to a jury on notice to the UM carrier, and the carrier had neither objected to nor sought intervention in that litigation.

> The doctrine of collateral estoppel, or issue preclusion, "bars relitigation of any issue [that] was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *State v. Gonzalez,* 75 *N.J.* 181, 186, 380 *A.*2d 1128 (1977).
>
> *[Id.]*

Addressing relaxation of the traditional rule of mutuality of parties, the Court cited

> the case-by-case approach that we anticipated in *McAndrew v. Mularchuk,* 38 *N.J.* 156, 161, 183 *A.*2d 74 (1962), observing: "Generally the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant." In *United Rental*

*Equipment Co. v. Aetna Life & Casualty Ins. Co.*, 74 *N.J.* 92, 376 *A*.2d 1183 (1977), we adopted a standard for applying collateral estoppel in cases where the parties to the prior action are not identical to the parties in the current action: "A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue." *Id.* at 101, 376 *A*.2d 1183 (quoting *Restatement (Second) of Judgments* § 88 (Tentative Draft No. 2, 1975)). The American Law Institute adopted that standard without significant change in the final version of the *Restatement. See Restatement (Second) of Judgments* § 29 (1982).

[*Id.*]

Section 27 of the *Restatement* sets forth the basic rule of collateral estoppel:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

The guiding principle is that the party to be bound had a "full and fair opportunity to litigate the issue" in the earlier proceeding. There can be no question that plaintiff had the opportunity in a PIP arbitration to present all of the evidence respecting causation that she could bring in a UM arbitration. Moreover, plaintiff chose to resolve her PIP claim in the arbitration forum and not in court. Although plaintiff's PIP and UM claims seek different remedies, the parties are identical, and several issues of medical causation that will arise in the UM arbitration were decided in the PIP arbitration. In considering the preclusive effect of an arbitration, we are guided largely by fairness and by the *Restatement. Nogue, supra,* 224 *N.J.Super.* at 386, 540 *A*.2d 889. There is nothing inherently unfair in giving that arbitration decision, once final, preclusive effect.

In other contexts, an arbitration award has been given preclusive effect in a subsequent judicial proceeding, so long as the party to be bound had the opportunity to make its case in the arbitration. *See, e.g., Konieczny v. Micciche,* 305 *N.J.Super.* 375, 384–87, 702 *A*.2d 831 (App.Div.1997) (new home purchaser suing home inspector in negligence is bound by facts previously found in arbitration against the builder under New Home Warranty &

Builders' Registration Act, *N.J.S.A.* 46:3B–1 *et seq.*). *See also Chattin v. Cape May Greene, Inc.,* 216 *N.J.Super.* 618, 634–38, 524 *A.*2d 841 (App.Div.), *certif. denied,* 107 *N.J.* 148, 526 *A.*2d 209 (1987) (homeowners' arbitration bars subsequent litigation).

Even where we did not give the arbitration award preclusive effect because the actual findings of the arbitrators were unclear, we have recognized the potential preclusive effect of an arbitration if the party to be bound has had its day in court. *See Rush Urology Assoc. v. Kuhn, Smith and Harris, Inc.,* 193 *N.J.Super.* 389, 395, 474 *A.*2d 1072 (App.Div.), *certif. denied,* 99 *N.J.* 143, 491 *A.*2d 660 (1984) (reversing a summary judgment based upon collateral estoppel):

> Collateral estoppel cannot be applied here, however, because the arbitrators made no findings respecting the issues to be retried. The award falls far short of compensating any party the amount claimed due. This could mean that the arbitrators found the partners/tenants responsible for some of the delay; but as we noted when the matter was last before us, one cannot tell from the award what percentage of the delay the arbitrators attributed to the partnership. The award could also mean that the arbitrators found the proof inadequate as to some claims. A party cannot be collaterally estopped from retrying an issue unless one knows the resolution of the issue in the prior proceeding.

Section 84 of the *Restatement* specifically addresses the preclusive effect of an arbitration award:

> (1) Except as stated in Subsection (2), (3), and (4), a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

> (2) An award by arbitration with respect to a claim does not preclude relitigation of the same or a related claim based on the same transaction if a scheme of remedies permits assertion of the second claim notwithstanding the award regarding the first claim.

> (3) A determination of an issue in arbitration does not preclude relitigation of that issue if:

> (a) According preclusive effect to determination of the issue would be incompatible with a legal policy or contractual provision that the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question, or with a purpose of the arbitration agreement that the arbitration be specially expeditious; or

(b) The procedure leading to the award lacked the elements of adjudicatory procedure prescribed in § 83(2).[5]

(4) If the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.

Habick does not suggest that "a scheme of [auto insurance] remedies" permits her to relitigate causation. The questions raised by her arguments are whether "a legal policy or contractual provision" specific to the UM arbitration, or the "purpose ... that the [PIP] arbitration be especially expeditious," or an absence of procedural safeguards in the PIP arbitration warrant an exception to the general rule of preclusion.

Plaintiff cites the legislative intent to provide speedy resolution of medical claims for injured parties as a public interest policy basis for excepting PIP awards from the preclusive effect of collateral estoppel, apparently relying on *Restatement* § 84(3)(a). Habick also contends that the PIP and UM arbitration procedures are significantly different, and that PIP arbitration therefore does not warrant preclusive effect under § 84(3)(b). The procedures in each case are governed by a set of rules promulgated by the American Arbitration Association.[6] Whereas § 8 of the PIP rules provides for a single arbitrator in all cases, § 8 of the UM rules permits either party to request a panel of three arbitrators if both "the amount claimed and available coverage limits exceed" the statutory minimum. Whereas review of a PIP arbitration award is limited by statute and case law, as discussed in Part I of this opinion, UM arbitration review, governed by the insurance con-

---

[5] Section 83(2) addresses the procedural safeguards of due process, such as providing adequate notice to all persons to be bound by the determination and allowing the parties an opportunity to be heard and to present evidence. *Restatement (Second) of Judgments* § 83(2) (1982). None of these are implicated here.

[6] *Compare* "PIP Arbitration Demand and Rules of the American Arbitration Association," reprinted in Craig and Pomeroy, *New Jersey Auto Insurance Law*, Appendix C–18 (1998); *with* Uninsured Motorist Demand and Rules of the American Arbitration Association, reprinted in Craig and Pomeroy, *New Jersey Auto Insurance Law*, Appendix C–19 (1998).

tract, generally provides for *de novo* proceedings in the Law Division when the award exceeds the statutory minimum and either partly rejects the award. *See* Craig and Pomeroy, *New Jersey Auto Insurance Law,* § 23:3–3 (1998).

We are not persuaded that these differences are material. We find no legal policies implicated by UM arbitration that would be infringed or hindered by giving the PIP arbitration preclusive effect. Nor does plaintiff provide us with any basis in the UM provision of plaintiff's insurance contract to warrant an exception.

Additionally, we have considered § 28 of the *Restatement,* which provides five exceptions to the general § 27 rule of preclusion. Those exceptions are:

(1) The party against whom the preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought has a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at that time of the initial action that the issues would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

[*Id.,* § 28]

Habick cites the exceptions set forth in § 28(1), (3) and (5) in opposition to the preclusive effect of the arbitration award. We disagree.

With respect to exception (1), limited reviewability, plaintiff reminds us that PIP arbitration is intended to permit "expedi-

tious" recovery of medical bills incurred as a result of an auto accident. *See, e.g., Amiano v. Ohio Cas. Ins. Co.,* 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981); *Washington v. Market Trans. Fac.,* 295 *N.J.Super.* 368, 372, 685 *A.*2d 57 (App.Div.1996). The relevance of this factor presumably is that speedy claim resolution is a powerful incentive to forego the litigation route for PIP claims, thereby sacrificing the right to broader appellate review in order to protect access to medical care. But limited reviewability is not the determinative factor. *See Zoneraich v. Overlook Hosp.,* 212 *N.J.Super.* 83, 93–94, 514 *A.*2d 53 (App.Div.), *certif. denied,* 107 *N.J.* 32, 526 *A.*2d 126 (1986) (administrative hearing that resulted in termination of staff privileges collaterally estopped physician from pursuing causes of action against the hospital and others based upon the same facts):

> A party is precluded by collateral estoppel from relitigating matters or facts which the party actually litigated and which were determined in a prior action, involving a different claim or cause of action, and which were directly in issue between the parties. [citations omitted]. . . .
>
> It is no objection that the administrative decision was subjected only to a lenient standard of review. *See Kremer v. Chemical Construction Corp.,* 456 *U.S.* 461, 481–482, 102 *S.Ct.* 1883, 1897–1898, 72 *L. Ed.*2d 262, *reh'g den.* 458 *U.S.* 1133, 103 *S.Ct.* 20, 73 *L. Ed.*2d 1405 (1982); *Davis v. United States Steel Supply Corp.,* 688 *F.*2d 166 (3 Cir.1982), *cert. denied,* 460 *U.S.* 1014, 103 *S.Ct.* 1256, 75 *L. Ed.*2d 484 (1983).

We recognize that arbitration of PIP claims advances the legislative intent to make medical treatment available quickly and expeditiously after an auto accident. It can then be argued that an injured party should not be penalized for having chosen PIP arbitration, with its limited reviewability. By contrast, although PIP litigation also binds plaintiff in subsequent personal injury litigation, *see Kozlowski v. Smith, supra,* 193 *N.J.Super.* at 674–75, 475 *A.*2d 663, the trial court's decision would be reviewable on a substantial-credible-evidence standard. We are satisfied that in allowing the injured claimant to choose the forum in which to resolve her PIP claim, the legislature could not have intended the results Habick seeks here: the same standard of review for PIP arbitration as for a trial court's determination, or freedom to retry her arbitrated claim in subsequent litigation or arbitration of her

non-economic damages. Where arbitration has been undertaken voluntarily, we see no reason to follow the *Restatement* § 28(1) exception to preclusion.

With respect to exception (3), plaintiff cites no limitation on her opportunity to present evidence or otherwise to be heard in the PIP arbitration. Nor are we persuaded that plaintiff has been "legally blindsided," pursuant to exception (5), as she contends, by the allegedly unexpected ruling that the PIP award would be binding in the pending UM arbitration. Plaintiff had reason to know she had a UM claim and would seek a UM award at the time she chose PIP arbitration.

The PIP arbitration challenged here reasonably met the standards set forth in the *Restatement*, §§ 27, 28, and 84 to warrant preclusion. The policies behind the doctrine of collateral estoppel—fairness, finality, and judicial economy—are all served by giving preclusive effect to the confirmed PIP arbitrator's decision (as modified) that neither Habick's claimed need for knee replacement nor her TMJ syndrome were a proximate result of this automobile accident.

## III.

In light of our conclusion that Habick is bound by the judgment confirming the PIP arbitrator's decision, the scope of that decision must be clear. Habick is barred in the UM arbitration (or any personal injury litigation arising out of this accident) from alleging future pain and suffering, or loss of enjoyment or earnings, due to projected knee replacement surgery. She is not, however, foreclosed from offering evidence of aggravation of the preexisting arthritic condition of her right knee, and pain and suffering related to treatment for that aggravation, short of total knee replacement surgery. As defendant points out, the arbitrator was not empowered to rule that Habick had no accident-related knee injury, but only that "the requirement for bilateral total knee replacement is not attributable to the injuries sustained in the accident and [to deny] it as a medical expense compensable by PIP." Again, in defendant's words, "[w]hether the injuries caused

by the automobile accident may have warranted arthroscopic surgery was not the issue which was before the arbitrator or this Court [because] [p]laintiff did not want to go ahead with the arthroscopic surgery."

Likewise, with respect to plaintiff's TMJ syndrome, according to defendant "the issue presented to the arbitrator was whether the TMJ treatment rendered beyond the date of the termination of benefits was reasonable, necessary and related to the accident. The arbitrator ... decided it was not." Habick is therefore not barred by the PIP award from alleging a causal relationship between the accident and TMJ symptoms up to the PIP cut-off date, or from seeking pain and suffering damages for such effects. She is barred from any claim for post cut-off TMJ problems.

As modified, we affirm the orders appealed from.