750 A.2d 223 (2000)
330 N.J. Super. 628
ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant,
v.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 2000
Decided May 11, 2000
*224 Robert P. Clark, Sea Girt, for plaintiff-appellant.
Mark E. Margiotta, for defendant-respondent (Pollock, Montgomery & Chapin, attorneys; John S. Fetten, on the brief).
Before Judges KING, LEFELT and LINTNER.
The opinion of the court was delivered by LEFELT, J.S.C., (temporarily assigned).
This appeal arises from a 1993 automobile accident between Joseph Herstek, an insured of plaintiff Allstate Insurance Company, and a commercial vehicle operated by Sean Borchers, owned by Woodbury Automotive, and insured by defendant Universal Underwriters Insurance Company. Allstate's insured requested and recovered personal injury protection ("PIP") benefits from Allstate. Allstate then sought reimbursement for these payments from Universal. N.J.S.A. 39:6A-9.1. After making an initial reimbursement payment in 1993, Universal asserted the applicable statute of limitations and refused additional reimbursement in 1996.
After agreeing that the statute of limitations issue would be appealable to the Law Division, Allstate and Universal submitted the dispute to arbitration. The arbitrators found in favor of Allstate, and Universal appealed. The Law Division judge stated that "[i]n the absence of a waiver of the applicability of the statute of limitations by Universal, Allstate was obliged to make a formal demand for arbitration within two years of [the] claim having been made for P.I.P. benefits by its insured." Thus, the judge vacated the arbitration award because he believed Universal had not "waived" its right to assert the statute. Allstate appealed from that determination, and we reverse.

I.
Allstate paid initial PIP benefits to its insured shortly after the July 28, 1993 automobile accident. Allstate then sought reimbursement from Universal. Michelle Ertle, a pre-litigation manager for the Robert P. Clark law firm stated on behalf of their client Allstate, "I enclose herein our proofs of loss and request upon completion of your review you contact me so that an amicable settlement may be reached." In response to this request, Universal paid Allstate $6,411.22, which represented Allstate's total PIP payments *225 to its insured at that time. Universal's check, however, indicated that the payment was "full and final settlement." On November 15, 1993, Ertle wrote to Paul Sitkus, the claim's examiner handling this matter for Universal. Ertle noted, "[a]s you are aware the within matter has been amicably resolved relative to Allstate's direct right of claim representing payments for PIP on behalf of Joseph Herstek. As you are also aware this claim is presently ongoing." She therefore requested a check without the full and final settlement language. Consequently, on November 30, 1993, Universal issued another check in the same amount, but without the "full and final settlement" notation.
Allstate and Universal had no further contact until Allstate's counsel wrote Universal on November 12, 1996, in pertinent part, as follows:
Our client has advised that this claim [is] presently ongoing.
Accordingly, I enclose herein additional proofs in the amount of $20,432.56 and request upon completion of your review you contact this office so that an amicable resolution may be obtained or in the alternative, forward your company's draft in the amount of $20,432.56[.]
In the event that the within matter may not be amicably resolved, this office is formerly [sic] demanding arbitration.
Apparently, the medical bills for which Allstate was now seeking reimbursement had been paid in 1994 and 1995.
On December 12, 1996, Universal refused Allstate's request for additional PIP reimbursement because, according to Universal, Allstate failed to satisfy the N.J.S.A. 39:6A-9.1 two-year statute of limitations. Allstate then demanded arbitration. After some procedural wrangling, the parties agreed to arbitrate before a panel of three arbitrators. As to the issues to be submitted to the arbitrators, the only dispute focused on whether the arbitrators would be permitted to decide the statute of limitations issue. Ultimately, the parties agreed that the limitations issue would be presented to the panel. In a June 4, 1997 letter, however, Universal indicated that it did not agree that the statute of limitations issue would be "binding," and "[i]n the event either party feels that they have an appealable issue they can do so by appealing the matter to the Law Division." Allstate agreed, "as long as the matter is decided in accordance with New Jersey law."
The arbitrators, by a two to one vote, awarded Allstate 100% reimbursement of its PIP payments. Aside from a one-page memorialization of the award, no transcript or record of the proceeding was made.
Thereafter, in April 1998, Allstate filed a verified complaint and order to show cause seeking confirmation of the arbitration award. In May 1998, Universal answered, counterclaimed and cross-moved for summary judgment seeking dismissal of Allstate's complaint and vacation of the arbitration award. On June 12, 1998, the Law Division judge heard oral argument on Allstate's order to show cause and Universal's cross-motion for summary judgment. The judge requested additional briefs and argument. Eventually, the Law Division judge rendered a written decision and order vacating the arbitration award and granting Universal's cross-motion for summary judgment because he determined that Allstate failed to comply with the statute of limitations. Allstate then appealed.

II.
In Habick v. Liberty Mutual Fire Insurance Co., 320 N.J.Super. 244, 253, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999), we held that the review standard announced in Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 640 A.2d 788 (1994), applied to review PIP arbitrations. Under Tretina, the review standard is as follows:
Basically, arbitration awards may be vacated only for fraud, corruption, or similar *226 wrongdoing on the part of the arbitrators. [They] can be corrected or modified only for very specifically defined mistakes as set forth in [N.J.S.A. 2A:24-9]. If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award.
[Tretina, supra, 135 N.J. at 358, 640 A.2d 788 (quoting Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 548-49, 610 A.2d 364 (1992)).]
Pursuant to this standard, only in rare circumstances may a court vacate an arbitration award for public-policy reasons, and errors of law or fact made by the arbitrators are not correctable. Id. at 357-58, 364, 640 A.2d 788; Ukrainian Nat'l Urban Renewal Corp. v. Joseph L. Muscarelle, 151 N.J.Super. 386, 396, 376 A.2d 1299 (App.Div.), certif. denied, 75 N.J. 529, 384 A.2d 509 (1977).
Habick rejected the broader standard of review utilized in public sector arbitration, and distinguished PIP arbitration from mandatory public sector "interest arbitration," e.g., Division 540, Amalgamated Transit Union, AFL-CIO v. Mercer County Improvement Authority, 76 N.J. 245, 386 A.2d 1290 (1978), and "grievance arbitration," e.g., Scotch Plains-Fanwood Board of Education v. Scotch Plains-Fanwood Education Ass'n, 139 N.J. 141, 651 A.2d 1018 (1995). Habick, supra, 320 N.J.Super. at 251-53, 727 A.2d 51.
In Habick, we explained that the more expansive public sector review standard was based on fairness, the public's interest in avoiding violations of law or public policy, and the need to protect the public welfare. Id. at 252, 727 A.2d 51. These public policy interests were not implicated when PIP arbitration was brought by an insured against her insurance company, as permitted by N.J.S.A. 39:6A-5. Id. at 246, 252-53, 727 A.2d 51. Similarly, in the present case, arbitration between two insurance companies, pursuant to N.J.S.A. 39:6A-9.1, does not raise the public policy considerations which warrant broader judicial review of public sector arbitration decisions.
As we pointed out in Habick, the public sector review standard potentially undercuts the purpose and policy behind PIP arbitration:
[T]o allow [public sector arbitration review] of a PIP award would require a verbatim record, with the attendant expense and delay that PIP arbitration is intended to avoid. The net result would be to defeat the overall purpose of, and public policy behind the PIP arbitration: to provide a prompt, efficient, and inexpensive means of dispute resolution that will minimize and not maximize resort to the courts.
[Habick, supra, 320 N.J.Super. at 253, 727 A.2d 51.]
As in Habick, a carrier's interest in reimbursement arbitration lies in a "predictable, consistent procedure and scope of review applicable across the board to all of the PIP arbitrations it faces." Ibid. If the Tretina standard is appropriate for use in arbitrations between insureds and insurers, it is even more appropriate when two insurers are disputing PIP reimbursement. We see no reason to apply the more rigorous standard of review utilized in public sector arbitration.
Neither party to this appeal asserted that the arbitrators committed fraud, corruption or any of the other limited bases permitted by Tretina to justify reversal of an award. Therefore, it would seem that the arbitration award should have been confirmed.
However, Universal contends that it took advantage of a procedure permitted by Tretina to expand the possible judicial review of an arbitrator's decision. The late Chief Justice Wilentz provided for this possibility as follows:
For those who think the parties are entitled to a greater share of justice, and that such justice exists only in the care of the court, I would hold that the parties are free to expand the scope of *227 judicial review by providing for such expansion in their contract; that they may, for example, specifically provide that the arbitrators shall render their decision only in conformance with New Jersey law, and that such awards may be reversed either for mere errors of New Jersey law, substantial errors, or gross errors of New Jersey law and define therein what they mean by that. I doubt if many will. And if they do, they should abandon arbitration and go directly to the courts of law.
[Tretina, supra, 135 N.J. at 358, 640 A.2d 788 (quoting Perini, supra, 129 N.J. at 548-49, 610 A.2d 364).]
Here, it appears the parties accepted the late Chief Justice's invitation. It might be argued that the Chief Justice contemplated that to expand appealable arbitration issues would require more specific language than the parties used in this dispute. Some ambiguity exists in exactly what the parties intended. For example, Allstate claims that by agreeing to review of the statute of limitations issue under New Jersey law, it assumed that Tretina applied and the arbitrators would not be reversed for mistakes of law or fact. Because we conclude that the arbitrator's decision should be confirmed for another reason, we need not resolve definitively what is required to expand the scope of judicial review as contemplated by Tretina.
We assume for purposes of this decision that the parties agreed that all issues resolved in the arbitration were binding except the statute of limitations. The limitations issue as determined by the arbitrators would not be "binding" on the parties; either party could then appeal the limitations issue to court, where it could be reversed if the arbitrator's decision was contrary to law. Accordingly, we move on to consider the Law Division judge's statute of limitations decision.

III.
N.J.S.A. 39:6A-9.1, in pertinent part, requires:
An insurer ... paying ... personal injury protection benefits ... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection ... benefits coverage ... under the laws of this State ... at the time of the accident. In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover the amount of payments and the amount of recovery ... shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
In this case, Universal's insured, the owner and operator of a commercial vehicle, was an insured tortfeasor who was not required to maintain PIP benefits. See Sherman v. Garcia Constr., Inc. 251 N.J.Super. 352, 598 A.2d 242 (App.Div.1991). Therefore, under the statute, Universal was potentially obligated to reimburse Allstate for the PIP benefits Allstate paid its insured.
The Law Division judge found, however, that Allstate did not meet the two-year statute of limitations. The judge based this decision on his determination that Universal did not "waive" its right to assert the limitations bar.
In New Jersey Automobile Full Insurance Underwriting Ass'n v. Liberty Mutual Insurance Co., 270 N.J.Super. 49, 53, 636 A.2d 550 (App.Div.1994), we held that "a formal demand for arbitration must be filed within two years of the filing of the PIP claim in order to satisfy N.J.S.A. 39:6A-9.1." There is no question that Allstate did not formally make such a demand within the two-year period. However, we have indicated that there are two methods *228 reflected in N.J.S.A. 39:6A-9.1 to resolve reimbursement disputes between insurers:
The statutory language in the second sentence [of N.J.S.A. 39:6A-9.1] pertaining to insured tortfeasors: `Shall be by agreement of the involved parties or, upon failing to agree, by arbitration,' is equally clear in showing the legislative intent that carriers seeking reimbursement from a tortfeasor's insurer should move for arbitration only upon failure to agree on entitlement and amount of payment. Thus, the Legislature contemplated two scenarios. The preferred one is agreement between the carriers. The alternative is binding arbitration.
[Underwriting, supra, 270 N.J.Super. at 53, 636 A.2d 550.]
In this case, we differ with the Law Division judge because we conclude that Allstate and Universal utilized the "preferred" method of resolving PIP reimbursement disputes: they agreed in 1993. The parties agreement was evidenced by Allstate's initial request for reimbursement, Universal's $6,411.22 payment, and the modification of the check to remove the "full and final settlement" language. Only if Universal declined to reimburse Allstate in 1993, when Allstate initially sought reimbursement, would Allstate have to demand arbitration within two years of the PIP claim.
Once the parties agreed that Universal would reimburse Allstate for the initial PIP payments, the two-year statute of limitations, contained in N.J.S.A. 39:6A-9.1, was no longer a factor. Waiver of the right to assert the statutory bar was quite beside the point. The applicable statute of limitations was satisfied by the agreement.
Arbitration, under the applicable statute, is required to resolve disputes relating to "the amount of recovery" as well as whether an insurer is "legally entitled to recover." N.J.S.A. 39:6A-9.1. Thus, after insurers reach a reimbursement agreement within two years of the filing of an insured's PIP claim, any future disputes regarding entitlement to recovery or the reimbursement amount are also to be resolved by agreement or arbitration. But, the two-year statute of limitations can no longer be raised as a bar.

IV.
Universal argues that because Allstate waited three years before contacting Universal for further reimbursement, laches should estop Allstate's recovery. As the Supreme Court explained in Lavin v. Board of Education of Hackensack, 90 N.J. 145, 152-53, 447 A.2d 516 (1982) (internal citations omitted):
The length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs. The length of the delay alone or in conjunction with the other elements may result in laches. It is because the central issue is whether it is inequitable to permit the claim to be enforced, that generally the change in conditions or relations of the parties coupled with the passage of time becomes the primary determinant.
Here, Allstate's delay, according to Universal, prevented Universal from monitoring the bills and payments and evaluating the reasonableness and necessity of the bills and expenses.
We need not decide in this litigation whether the equitable doctrine of laches, as urged by Universal, or the six-year statute of limitations for "recovery upon a contractual claim," N.J.S.A. 2A:14-1, applies to reimbursement disputes arising after the 1993 agreement. After all, if the six-year statute applies, Allstate's subsequent reimbursement claim was well within that time-frame. Moreover, laches will not be utilized to bar Allstate's recovery in this case.
Here, Allstate evaluated and paid its insured's medical bills from 1993 until early 1995. So far as Allstate knew, Universal had accepted its reimbursement obligation, *229 and Universal knew that its 1993 payment was made in an ongoing case. Therefore, Universal could have quite easily asked Allstate for a status report at any time. It was unrealistic, under the facts of this case, for Universal to assume that no further bills would be submitted for reimbursement after 1993. Of course, Allstate's lengthy silence was also troubling. It would have been preferable for Allstate to have maintained closer communication with Universal. Nonetheless, because we find delay and inattention on both sides, it is not equitable to utilize laches to bar recovery.
Accordingly, we reverse the judgment of the trial court and reinstate the arbitrator's award. We remand to the Law Division solely to confirm the arbitrator's award.