775 A.2d 625

FIREMAN'S FUND INSURANCE COMPANY, PLAINTIFF–AP-
PELLANT, v. NEW JERSEY MANUFACTURERS INSUR-
ANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 22, 2001—Decided June 29, 2001.

Before Judges WECKER and LANDAU.

*Kenneth R. Rothschild* argued the cause for appellant (*Golden, Rothschild, Spagnola, Lundell & Levitt*, attorneys; *Mr. Rothschild*, of counsel; *Mr. Rothschild*, and *Audrey L. Shields*, on the brief).

*William F. Hartigan, Jr.* argued the cause for respondent (*McLaughlin & Cooper*, attorneys; *John J. Gentile*, of counsel; Messrs. *Gentile and Hartigan*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff Fireman's Fund Insurance Company (Fireman's) appeals from a Law Division order granting summary judgment to defendant New Jersey Manufacturers Insurance Company (NJM)

in Fireman's action, filed December 4, 1998, to recover Personal Injury Protection (PIP) benefits it paid to the driver of its insured vehicle for treatment of injuries arising from a 1987 motor vehicle accident caused by a commercial vehicle insured by NJM. Notwithstanding the language of the complaint, Fireman's briefs on appeal make it clear that its purpose is to seek "a declaratory judgment of this court [affording an opportunity] to submit the matter to arbitration."

The appeal requires us to address the meaning of a special statute of limitations provision of *N.J.S.A.* 39:6A–9.1 in light of related statutes and court decisions and in order to achieve an interpretation consistent with logic and the purpose of the statute.

*N.J.S.A.* 39:6A–9.1 affords to insurers, HMOs, or governmental agency payors of either PIP or *N.J.S.A.* 39:6A–3.1 medical benefits, a right of reimbursement (as distinguished from "subrogation" [1]) against tortfeasors who are either not required to maintain coverage for such payments, or who are so required, but have failed to comply. *N.J.S.A.* 39:6A–9.1 provides, in pertinent part, that the paying PIP insurer, HMO, or governmental agency "shall, within two years of the filing of the claim, have the right to recover the amount of payments" made under PIP from the non-PIP-covered tortfeasor. It also provides:

> In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer, health maintenance organization or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.

[*N.J.S.A.* 39:6A–9.1.]

---

[1] *N.J.S.A.* 39:6A–9, adopted in 1973 but inoperative by its own terms since June 1974, had provided a temporary right of "subrogation" to PIP insurers. Section 9.1 creates a direct right of *reimbursement,* not a subrogation right. *Unsatisfied Claim & Judgment Fund Bd. v. New Jersey Mfrs. Ins. Co.,* 138 *N.J.* 185, 191, 649 *A.2d* 1243 (1994).

Under the PIP scheme, medical expense benefits to covered persons are payable up to an amount of $250,000 per person per accident. *N.J.S.A.* 39:6A–4. However, where benefits paid by a PIP insurer exceed $75,000 on account of bodily injury to one person in one accident, the "excess shall be paid by the insurer in consultation with the Unsatisfied Claim and Judgment Fund Board and shall be reimbursable to the insurer from the Unsatisfied Claim and Judgment Fund...." *Ibid.*

Fireman's insured, Michael Himowitz, was severely injured in a 1987 motor vehicle accident when the vehicle he was operating was struck from behind by a commercial vehicle owned by Jevic Transportation and insured by NJM. The Jevic driver was found to be at fault.

After providing initial PIP medical benefits of $2193.68 requested by Himowitz in 1988, Fireman's filed a *N.J.S.A.* 39:6A–9.1 claim for reimbursement with NJM on June 21, 1988. Fireman's simultaneously filed a separate subrogation claim for recovery of the property damage payments it had made. NJM issued checks for both claims and Fireman's issued a separate "Notice of Payment Received" on November 21, 1988, for each claim. The property damage receipt stated "Subro/final/100%". The medical payments receipt stated "Subro/Partial". NJM's check for the medical payments reimbursement was modified at Fireman's insistence to remove a "final payment" statement in the endorsement section.

The next communication between the two insurers is reflected in a notation in Fireman's files that an NJM representative called on December 10, 1990, to request a printout of Fireman's PIP payments under this claim file and that Fireman's sent a printout via fax on December 13, 1990. At that time Fireman's internal memorandum stated "our claim is over $20,000."

No further request for reimbursement was made by Fireman's until February 25, 1993, by which time the Himowitz medical benefits totaled $113,233.11. By letter dated July 26, 1993, NJM's attorneys replied to Fireman's February 25, 1993, request, stating that no obligation existed because the request was "made almost

five years after Michael Himowitz applied for PIP on March 10, 1988." The letter went on to state that, "[a]s you know, *N.J.S.A.* 39:6A–9.1 requires you to assert this type of subrogation claim within a period of two years." (Apparently, the statutory reimbursement right continues to be referred to colloquially in the industry as "subrogation".) This litigation followed.

■ In granting NJM's motion for summary judgment, the motion judge cited *New Jersey Automobile Full Insurance Underwriting Association v. Liberty Mutual Insurance Co.,* 270 *N.J.Super.* 49, 53, 636 *A.*2d 550 (App.Div.1994), and noted that no arbitration request had been made within two years of Himowitz's first claim nor even within two years after Fireman's payment of PIP benefits.

We reverse. Initially, we observe that the judge did not have the benefit of the opinion in *Allstate Insurance Co. v. Universal Underwriters Insurance Co.,* 330 *N.J.Super.* 628, 750 *A.*2d 223 (App.Div.2000), decided less than two months after judgment was entered in this case. In *Allstate,* as here, the tortfeasor's insurer, Universal, having reimbursed Allstate for its initial PIP payments, rejected a subsequent claim for ongoing medical benefits, asserting expiration of the *N.J.S.A.* 39:6A–9.1 two-year statute of limitations. An arbitration was then requested and conducted, subject to the stipulation that the limitations issue could be judicially resolved. The Law Division found that Allstate failed to comply with the two-year limitations provision because Universal did not waive its right to assert the limitations bar. On appeal, we recognized the holding in *Underwriting* that required filing of a demand for arbitration within two years of the filing of the PIP claim in the absence of an agreement to reimburse. *Underwriting, supra,* 270 *N.J.Super.* at 53, 636 *A.*2d 550. We also concluded, however, that Allstate's timely request for reimbursement of its initial PIP payments and Universal's compliance with that request by issuing an unqualified payment check constituted an agreement of the parties sufficient to satisfy the two-year statutory provision. Specifically, we said:

Once the parties agreed that Universal would reimburse Allstate for the initial PIP payments, the two-year statute of limitations, contained in *N.J.S.A.* 39:6A–9.1, was no longer a factor. Waiver of the right to assert the statutory bar was quite beside the point. The applicable statute of limitations was satisfied by the agreement.

Arbitration, under the applicable statute, is required to resolve disputes relating to "the amount of recovery" as well as whether an insurer is "legally entitled to recover." *N.J.S.A.* 39:6A–9.1. Thus, after insurers reach a reimbursement agreement within two years of the filing of an insured's PIP claim, any future disputes regarding entitlement to recovery or the reimbursement amount are also to be resolved by agreement or arbitration. But, the two-year statute of limitations can no longer be raised as a bar.

[*Universal, supra,* 330 *N.J.Super.* at 636, 750 *A.*2d 223.]

*Universal* best harmonizes the provisions of *N.J.S.A.* 39:6A–9.1 with the entire statute of which it is a part. As the Supreme Court observed in *Unsatisfied Claim & Judgment Fund, supra,* at 205, 649 *A.*2d 1243,

Uninsured and commercial vehicle tortfeasors do not share in the costs of maintaining the no-fault system; however, without section 9.1, they would otherwise reap its benefits. That is so because the No Fault Law forces insurers to pay for their own insureds' expenses and also prohibits injured parties from suing tortfeasors for the same costs, resulting in those tortfeasors avoiding any responsibility for their roles in the accidents. Allowing recoupment simply ensures that the private-passenger automobile insurers do not subsidize other insurers and that those savings are passed on to consumers-the same consumers the no-fault law was designed to protect.

The Court went on to emphasize that "one goal of the No Fault Law is to avoid excessive litigation related to accidents and insurance; the section 9.1 reimbursement right . . . requires resolution by intercompany agreement or arbitration." *UCJF, supra,* 138 *N.J.* at 205–206, 649 *A.*2d 1243. The Court emphasized that the legislative goal here was to require disputes to be settled by arbitration rather than increasing court actions between insurers. *Id.* We have also recognized the strong legislative policy set forth in *N.J.S.A.* 39:6A–9.1 to confine the resolution of questions between carriers arising under that section to agreement or arbitration, without adding to the litigation burden of the courts. *Ideal Mut. Ins. Co. v. Royal Globe Ins. Co.,* 211 *N.J.Super.* 336, 340–41, 511 *A.*2d 1205 (App.Div.1986).

We do not agree with the motion judge's conclusion that *Underwriting,* supports summary judgment in this case. Indeed, while emphasizing the importance of expeditious assertion of a PIP insurer's rights against a tortfeasor's carrier under *N.J.S.A.* 39:6A–9.1, we said, "[o]nce the right to recovery is initially assert-ed within the period set by the statute, subsequent bills are not barred absent a showing of waiver, prejudice or laches, the equitable principles enunciated in *Ideal, supra,* 211 *N.J.Super.* at 340, 511 *A.2d* 1205." The facts in the present matter are distin-guishable from those cases where no agreement for partial reim-bursement was reached or arbitration request made by the PIP carrier before expiration of the two-year period. *See, e.g., Otto v. Prudential Prop. & Cas. Ins. Co.,* 278 *N.J.Super.* 176, 650 *A.*2d 832 (App.Div.1994); *Tyberg v. Kokinidis,* 283 *N.J.Super.* 84, 660 *A.*2d 1301 (Law Div.1995).

Although the motion judge deemed our opinion in *Aponte–Correa v. Allstate Ins. Co.,* 317 *N.J.Super.* 597, 722 *A.*2d 955 (App.Div.1999) to have no bearing upon this case, *Aponte* illus-trates one of the problems with a rigid construction of the two-year limitations period in *N.J.S.A.* 39:6A–9.1. Medical payments to a PIP insured may occur sporadically for a number of years after the initial claim is made. As in *Aponte,* the underlying PIP claim itself may be the subject of a lengthy dispute after it is filed.

Consistent with the two main statutory purposes of section 9.1 (proper allocation of the PIP payments burden [2] and limitation of inter-company resolution of section 9.1 disputes to agreement or arbitration), courts must foster arbitration of such disputes be-tween carriers, particularly those arising after an initial reim-bursement by the tortfeasor's carrier has established an agree-ment as to liability, if not as to future amounts. Once the tortfeasor's insurer has made reimbursement of initial medical

---

[2] These become significant in light of other statutes and regulations, such as, *inter alia, N.J.S.A.* 17:23–1; *N.J.A.C.* 11:3–28.3 to 10, 3–28.13; *N.J.A.C.* 11:3–25.8; and *N.J.A.C.* 11:3–5.1 to 12, some of which may affect or be affected by time factors.

payments to the PIP insurer, and, as here, has been made aware that continuing medical payments may be required, we do not think that the Legislature intended to shift the cost of those payments back to consumers who pay private-passenger automobile insurance premiums.

In sum, we conclude that the statutory scheme and our previous holding require that where the basic issue of liability for reimbursement has been agreed to by the tortfeasor's insurance carrier, questions arising respecting ongoing payments must be resolved by arbitration. The issue of timeliness of that arbitration request remains subject, in the arbitration, to equitable considerations such as waiver, prejudice and laches. *Underwriting, supra,* 270 *N.J.Super.* at 55, 636 *A.*2d 550; *Ideal, supra,* 211 *N.J.Super.* at 340, 511 *A.*2d 1205; *Mitchell v. Alfred Hofmann, Inc.,* 48 *N.J.Super.* 396, 405, 137 *A.*2d 569 (App.Div.), *certif. denied,* 26 *N.J.* 303, 139 *A.*2d 589 (1958).

Consistent with the above views, we reverse the order granting summary judgment. We treat the present action as a request for a declaration of Fireman's right to arbitration. That request is granted and made subject to "equitable principles applicable to arbitration." *Ideal, supra,* 211 *N.J.Super.* at 340, 511 *A.*2d 1205. We remand to the Law Division for entry of an order consistent herewith.