**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0460-15T2

JOSEPH PETRONE,

    Plaintiff-Appellant,

v.

ALEX J. SABO, ESQ., and
BRESSLER, AMERY & ROSS, P.C.,

    Defendants-Respondents.

_____

        Argued April 27, 2017 — Decided June 13, 2017

        Before Judges Lihotz and O'Connor.

        On appeal from Superior Court of New Jersey,
        Law Division, Monmouth County, Docket No. L-
        2648-12.

        Elena Gammardella argued the cause for
        appellant (Law Office of Richard A. Amdur,
        Jr., and Hoagland, Longo, Moran, Dunst &
        Doukas, LLP, attorneys; Richard J. Mirra, on
        the brief).

        Mark M. Tallmadge argued the cause for
        respondents (Bressler, Amery & Ross, P.C.,
        attorneys; Mr. Tallmadge and Risa D. Rich,
        on the brief).

PER CURIAM

In this legal malpractice action, plaintiff Joseph Petrone appeals from the May 19, 2015 Law Division order, which granted partial summary judgment to defendants Alex J. Sabo and Bressler, Amery & Ross (BAR). After reviewing the record and applicable legal principles, we affirm.

I

The motion record informs the following. In 2005, plaintiff was working as a broker-dealer for Investacorp, Inc., a financial services firm. A client of Investacorp filed a claim against it and plaintiff with the National Association of Securities Dealers (NASD), alleging they wrongfully caused the client to sustain losses to its investment account.[1] In 2006, Investacorp and plaintiff retained BAR to defend and represent them at the NASD arbitration hearing (investor arbitration). Sabo was an attorney at BAR who handled this matter.

Investacorp wanted to settle the matter with the investor, but plaintiff, believing he was not liable, was unwilling to settle. Just days before the arbitration hearing, plaintiff obtained his own attorney; defendants continued to represent Investacorp. Before the arbitration hearing commenced,

---

[1] In 2007, NASD became known as the Financial Industry Regulatory Authority (FINRA).

2

Investacorp settled with the investor for $275,000. Two days later, plaintiff settled for $2500.

In general, broker-dealers are required to report arbitration awards and settlements. Thus, Investacorp filed a "Form U4" with NASD in which Investacorp stated both it and plaintiff settled the claim with the investor, and reported the amount each contributed toward the settlement. Before Investacorp filed this form, plaintiff took the position he did not contribute toward Investacorp's settlement, as he separately settled with the investor. Moreover, because his settlement was less than $10,000, he was not required to report his settlement with NASD. Despite plaintiff's protestations, Investacorp declined to amend the form and filed it with NASD.

Approximately one month later, Investacorp terminated plaintiff. As part of the termination process, Investacorp was required to and did file a Form U5 with NASD.[2] In that form, Investacorp reported plaintiff contributed $2500 to the settlement of the investor's claim. Plaintiff complained to Investacorp it was improper to include in the U5 form that he had contributed toward Investacorp's settlement of the investor's claims, again contending his settlement was separate

_____

[2] Form U5 is the Uniform Termination Notice for Securities Industry Registration used by broker-dealers to report the termination of the registration of an individual.

A-0460-15T2

from Investacorp's and, further, his settlement of $2500 did not have to be reported.  Plaintiff requested Investacorp amend both forms and delete reference of his settlement with the investor, but Investacorp refused to do so.  According to plaintiff, there is a question of fact whether BAR advised Investacorp to include the contested information on the forms.

In 2007, plaintiff filed a claim against Investacorp with FINRA, alleging the subject information in the U4 and U5 forms was false and caused him to lose income.  As a remedy, plaintiff sought removal of the allegedly misleading information from the U4 and U5 forms, and damages in the amount of $531,500.  The specific causes of action plaintiff asserted against Investacorp were breach of contract, negligence, negligent misrepresentation, and violation of the New Jersey Wage Payment Law.  In an amended statement of claim presented to the arbitration panel, plaintiff broke down his request for $531,500 in compensatory damages as follows:

(1)  $19,570 in lost trail commission/wages;

(2)  $51,430 in lost earnings in 2007;

(3)  $40,500 in lost earnings in 2008;

(4)  $400,000 for estimated lost earnings for 2009 through 2019; and

(5)  $20,000 in penalties.

4

Investacorp filed a counterclaim, seeking that plaintiff indemnify it for the $275,000 it paid in settlement to the investor, and attorneys fees.  BAR did not represent Investacorp in this matter (employment arbitration).

After three days of hearings, at which both parties were represented by counsel, the three-member panel of FINRA arbitrators heard testimony and reviewed documentary evidence. The panel ultimately found in plaintiff's favor.  The panel ordered Investacorp to pay plaintiff $12,150 in compensatory damages, plus interest, and recommended the expungement of all references to the investor's claim from plaintiff's registration records.  All of the relief Investacorp sought in its counterclaim was denied.

Three years later, in 2012, plaintiff filed the within action against Sabo and BAR for legal malpractice.  In answers to interrogatories, plaintiff alleged defendants had a conflict of interest when they represented both him and Investacorp; abandoned plaintiff just days before the investor arbitration; and were responsible for the misleading content in the U4 and U5 forms.  Plaintiff claimed the compensatory damages he sustained as a result of defendants' conduct was $531,500, which when broken down were exactly the same damages he claimed before the employment arbitration panel:

5

        (1)   $19,570 in lost trail commission/wages;

        (2)   $51,430 in lost earnings in 2007;

        (3)   $40,500 in lost earnings in 2008;

        (4)   $400,000 for estimated lost earnings for 2009 through 2019; and

        (5)   $20,000 in penalties.

In addition, he claimed attorneys fees of $22,000.

Defendants filed a motion for summary judgment dismissal, arguing the doctrine of collateral estoppel precluded plaintiff from recovering the aforementioned compensatory damages from defendants. Their motion was denied but, on reconsideration, the court granted defendants partial summary judgment. The court found plaintiff collaterally estopped from seeking the same damages sought, litigated, and considered by the arbitrators during the employment arbitration hearing. However, the court also found that to "the extent the plaintiff has claims for damages beyond those amounts attributable directly to Investacorp's improper filing of the U4 and U5 forms, they may be pursued in this matter."

Thereafter, the parties entered into a consent order stating all remaining claims were settled, but that plaintiff preserved his right to appeal the order granting defendants partial summary judgment. This appeal ensued.

6

A-0460-15T2

Plaintiff's principal argument on appeal is the trial court erred when it found plaintiff barred from relitigating the subject damages on the grounds of collateral estoppel. We disagree and affirm.

The doctrine of collateral estoppel operates to preclude the relitigation of issues that have been previously decided. Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 522 (2006). For the doctrine to apply, the party asserting the bar must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Id. at 521 (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

This doctrine applies not only to issues raised in a prior action, but also to facts that were in dispute as well. Id. at 522. Moreover, collateral estoppel may apply even if the prior proceeding was an arbitration hearing. Habick v. Liberty Mut. Fire Ins. Co., 320 N.J. Super. 244, 257-58 (App. Div.), certif. denied, 161 N.J. 149 (1999).

Applying the elements of collateral estoppel to this matter, first, the damages defendants seek to preclude from being relitigated are the very same damages plaintiff sought to recover from Investacorp during the employment arbitration hearing. After plaintiff's entitlement to compensatory damages was litigated before the panel, the arbitrators determined these damages were $12,150. But for the attorneys fees plaintiff seeks from defendants, there is no question the damages plaintiff seeks in this matter are identical to those sought in the employment arbitration. However, the trial court did not preclude plaintiff from seeking all damages from defendants in the within matter, just those sought and litigated during the arbitration hearing.

As for the second element, whether the damages the trial court barred from relitigation on collateral estoppel grounds was litigated in the prior proceeding, there is no question when before the panel, plaintiff advocated he was entitled to the very same $531,500 in damages he seeks in the within matter. After three days of hearings, during which the panel heard testimony and reviewed various documents, the panel found in plaintiff's favor, although it determined he was entitled to only $12,150 in compensatory damages.

8

The third element is whether the court in the prior proceeding issued a final judgment on the merits. An arbitration panel is not, of course, a court and, thus, cannot enter a final judgment. However, "the dispositions reached by arbitrators are afforded collateral estoppel effect by reviewing courts." Levine v. Wiss & Co., 97 N.J. 242, 250 (1984). As for the fourth and fifth elements, there is no question the damages plaintiff sought to recover in the arbitration hearing were essential to the arbitration award, and the party against whom the doctrine is asserted was a party to the earlier proceeding.

We note that even if the elements of collateral estoppel are met, a court may exercise its discretion to deny preclusion where its application would be unfair. "Even where these requirements are met, the doctrine [of collateral estoppel], which has its roots in equity, will not be applied when it is unfair to do so." Pace v. Kuchinsky, 347 N.J. Super. 202, 215 (App. Div. 2002). Here, plaintiff argues applying this doctrine to bar the subject damages would be inequitable. We are not persuaded.

As we observed in Pace, supra, 347 N.J. Super. at 216, factors disfavoring preclusion include:

> [T]he party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the

9

procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.

Here, even if the arbitration award could not be reviewed, none of the other factors applies. The arbitration hearing was a contested hearing and, although there was no jury, the hearing was otherwise sufficiently comparable to a non-jury hearing conducted in court. Plaintiff knew or should have known the damages he sought to litigate and have decided at the arbitration proceeding could be precluded in subsequent litigation. Finally, plaintiff did have an adequate opportunity to fully adjudicate his entitlement to the subject damages during the arbitration proceeding. In summary, it is clear the five elements of collateral estoppel were met, and fairness weighs in favor of preclusion.

We have considered plaintiff's remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-0460-15T2