**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3196
_____

TIMOTHY MCHALE

v.

TAYLORED SERVICES, LLC,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 2-16-cv-01785)
District Judge:  Honorable Jose L. Linares

_____

Argued on March 21, 2017

Before:  AMBRO, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 12, 2017)

Christopher M. Farella, Esq,         **(Argued)**
Anthony J. Laura, Esq.
Epstein Becker & Green
One Gateway Center
13th Floor
Newark, NJ 07102

                    Counsel for Appellant

Robert H. Bernstein, Esq.
Mark D. Lurie, Esq.          **(Argued)**
Greenberg Traurig
500 Campus Drive
Suite 400
Florham Park, NJ 07932

                    Counsel for Appellee

_____

OPINION[*]

_____


ROTH, Circuit Judge

This case involves the modification of an arbitration award. Timothy McHale requested arbitration regarding his termination from Taylored Services, LLC, alleging that he was fired without cause and without severance, in violation of his employment agreement. Taylored claimed that McHale was fired for cause and that he waived any right to severance by violating the restrictive covenants required by the agreement. The Arbitrator awarded McHale severance but did not award attorney's fees to either party. McHale moved to partially confirm and partially modify the award, and the District Court modified the award to grant McHale attorney's fees. Taylored now appeals the District Court's modification of the award. We will reverse.

**I.**

McHale was hired by Taylored as its Chief Operating Officer in June 2011. In

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

November 2012, McHale signed an employment agreement (Agreement) which included terms for termination and an arbitration clause. Section 5(c) of the Agreement provided that Taylored was able to terminate McHale immediately for cause if, *inter alia*, McHale "engag[ed] in any conduct amounting to . . . gross negligence . . .." Under Section 5(d), Taylored could also terminate McHale without cause as long as, *inter alia*, Taylored provided written notice and paid McHale severance. Section 5(d) also provided that "[n]otwithstanding any other term of this Agreement, or of the Employee Release, [Taylored] shall have no obligation to pay any severance compensation to [McHale] following any breach" of the Section 7 restrictive covenants. In relevant part, Section 7 required that upon termination, McHale would not take, or would promptly return, all company property in his control.

The Agreement also specified that disputes arising out of the Agreement would be resolved by arbitration. Section 17 specified that "arbitration shall be the exclusive process for the resolution of any claim, action, dispute or controversy of any kind or nature, at law or in equity, as between or among Employer and Employee and related to, arising from or otherwise with respect to this Agreement or the subject matter hereof." The only matters not required to be arbitrated involved Taylored's right to pursue equitable remedies in the event of actual or threatened breach of the restrictive covenants outlined in Section 9. Section 17 also provides that "[t]he prevailing party shall be entitled to . . . reasonable attorneys' fees and expenses . . .."

McHale was terminated on July 19, 2013, purportedly for gross negligence in hiring illegal aliens through a staffing agency. McHale kept his company laptop for

3

several months after termination, despite numerous requests for its return. In October 2013, Taylored filed suit in the Superior Court of New Jersey, requesting return of the laptop. In November 2013, Taylored reported that McHale had returned the laptop and dismissed the action. On April 13, 2014, McHale initiated arbitration, alleging that he was terminated without cause and seeking, among other things, severance. Taylored denied liability, both because McHale was terminated for cause and because McHale violated the Section 7 restrictive covenants.

The Arbitrator issued an opinion finding that 1) Taylored breached the Agreement by firing McHale without cause, and 2) McHale violated the restrictive covenant in Section 7. The Arbitrator awarded McHale severance. The Arbitrator then stated that "[b]ased upon my equitable power afforded by the arbitration provision in the employment agreement, I treat the breach of the restrictive covenant requiring return of the laptop as a counterclaim."[1] Reasoning that "[McHale] prevailed on his breach of the employment claim and [Taylored] prevailed on the breach of restrictive covenant counterclaim[,]" the Arbitrator could not "find that one party prevailed 'more' than the other" and did not award attorney's fees to McHale.[2]

To challenge the Arbitrator's Award, McHale filed a Verified Complaint for Summary Action in the New Jersey Superior Court. Taylored Services removed this complaint to the District Court. McHale then moved to partially confirm and partially modify the Award. The District Court held that "[w]hether McHale breached a restrictive

---

[1] JA 11.
[2] JA 12.

4

covenant by maintaining possession of the company issued [laptop] was unrelated to the core underlying claim." The District Court also emphasized the distinction between an affirmative defense and a counterclaim and held that the Arbitrator could not create a counterclaim out of an affirmative defense. Based on this conclusion, the District Court modified the arbitration award by awarding McHale attorney's fees. This appeal followed.

## II.[3]

A court has limited authority to vacate or modify an arbitration award. Under N.J.S.A 2A: 23B-24, a court may modify an award if "the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted[.]"[4] These grounds are very narrowly construed. In *Tretina Printing, Inc. v. Fitzpatrick & Associates., Inc.*, the New Jersey Supreme Court adopted a standard that narrowed the grounds for modification to those listed in the previous arbitration statute.[5] The standard clarified that "parties are free to

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332(a), and this Court has jurisdiction under 28 U.S.C. § 1291. "[W]e review the [District Court's] legal conclusions de novo and its factual findings for clear error." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (citations omitted). "[A] federal court must apply the substantive laws of its forum state in diversity actions." *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007), *as amended* (July 19, 2007), *as amended* (Nov. 23, 2007) (citation omitted). The substantive laws of New Jersey therefore apply here.
[4] New Jersey adopted the Revised Uniform Arbitration Act of 2000, effective January 1, 2003, which created new provisions, found in N.J.S.A 2A: 23B-1 *et seq*. The Act modified the existing New Jersey arbitration law so that the old provisions now apply only to collective bargaining or collectively negotiated agreements. N.J.S.A. 2A: 24-1.1. The new provision, in 2A: 23B-24, is virtually identical to the old provision in 2A: 24-9.
[5] 640 A.2d 788, 793 (N.J. 1994) (adopting the view that arbitration awards "can be corrected or modified only for very specifically defined mistakes as set forth in [N.J.S.A.

5

expand the scope of judicial review by providing for such expansion in their contract . . . [such as] that such awards may be reversed either for mere errors of New Jersey law, substantial errors, or gross errors of New Jersey law and define therein what they mean by that."[6] Lower courts have interpreted this standard as not allowing review for mistakes of law, unless parties have contracted otherwise.[7]

We understand McHale to make three arguments as to why the Arbitrator erred in considering the restrictive covenant issue. First, McHale suggests that the Agreement requires that restrictive covenant claims be brought in court. However, Sections 17 and 9 of the Agreement merely allow Taylored to also seek *injunctive relief* from a court for a breach of the restrictive covenant. The current issue, whether McHale breached the restrictive covenant, is not a claim for injunctive relief and is clearly covered by the broad language and scope of the arbitration clause in Section 17.[8]

Second, McHale argues that even if the claim were theoretically arbitrable, the claim was not actually submitted to the Arbitrator. McHale cites *Habick v. Liberty*

---

2A:24-9]") (alteration in original) (quoting *Perini Corp. v. Greate Bay Hotel & Casino*, 610 A.2d 364, 399 (N.J. 1992) (Wilentz, C.J., concurring)).

[6] *Id.* (quoting *Perini Corp.*, 610 A.2d at 399).

[7] *Empire Fire & Marine Ins. Co. v. GSA Ins. Co.*, 808 A.2d 98, 102 (N.J. App. Div. 2002) ("This was not a public sector arbitration matter and, thus, unless agreed by the parties (not here contended), the appropriate judicial scope of review does not encompass errors of law or facts.") (citation omitted); *Cap City Prods. Co. v. Louriero*, 753 A.2d 1205, 1208 (N.J. App. Div. 2000) ("Thus, even assuming [the arbitrator] made a mistake of law by using a marketability discount, that assumed mistake would provide no basis to overturn or modify his award[.]"). Both cases concerned vacatur of an award rather than modification, but their discussion of the scope of review is equally applicable here.

[8] McHale also argues that this issue was beyond the Arbitrator's jurisdiction because Taylored had already sought and received relief for the laptop return. However, the earlier motion for injunctive relief did not render moot the issue of whether retaining the laptop was a breach of the contract.

*Mutual Fire Insurance Company*, in which the plaintiff submitted her personal injury protection claim to an arbitrator to decide whether an accident necessitated knee replacement surgery for the plaintiff. When the arbitrator made a ruling on whether Liberty Mutual authorized an entirely separate surgery to the plaintiff's other knee, the Superior Court of New Jersey held that the arbitrator erred by ruling on a claim not submitted to him.[9] Unlike the arbitration in *Habick*, however, the two issues in McHale's arbitration are highly related.[10] Section 5(d) explicitly links the two issues, such that McHale could not expect a ruling on severance without discussion of the restrictive covenants. Indeed, both parties extensively briefed and argued these issues.[11] For this reason, the restrictive covenant issue was properly submitted to the Arbitrator.

Third, McHale focuses on the distinction between a counterclaim and an affirmative defense, suggesting that the Arbitrator could not convert an affirmative defense into a counterclaim and award fees accordingly. This, however, is at most an error of law, which is unreviewable by a court absent agreement to the contrary.[12]

---

[9] *Habick v. Liberty Mut. Fire Ins. Co.*, 727 A.2d 51, 56-57 (N.J. App. Div. 1999) (relying on N.J.S.A. 2A: 24-9).

[10] *Cf. Bound Brook Bd. of Educ. v. Ciripompa*, 153 A.3d 931, 939-40 (N.J. 2017) (vacating an arbitration award when the arbitrator converted a claim of "conduct unbecoming" to one of sexual harassment and required the party to prove that the charged conduct satisfied that claim).

[11] McHale argues that he would have raised additional objections if he had been aware that the Arbitrator was construing the issue as a counterclaim. However, even if we assume that these arguments were not waived, none of them would change our opinion. Additionally, to the extent that these arguments discuss legal bars to the Arbitrator's award, we cannot review the award for mistakes of law.

[12] McHale also alleges that the Arbitrator's award of severance necessarily means that the Arbitrator should have found that McHale no longer had any obligation to keep the restrictive covenants. Even if the Arbitrator's two findings were potentially

7

Thus, we conclude that the restrictive covenants issue was properly before the Arbitrator. This conclusion ends our review.[13]

## III.

For the foregoing reasons, we will reverse the judgment of the District Court, modifying the Arbitrator's award.

---

contradictory, this is also an error of law which we cannot review.

[13] Because we conclude that the restrictive covenant issue was properly before the Arbitrator, we decline to discuss whether a modification of the Arbitrator's award would affect the merits of the decision.