895 A.2d 1218

SELECTIVE INSURANCE COMPANY, A CORPORATION, PLAINTIFF–APPELLANT, v. NATIONAL CONTINENTAL INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 3, 2006—Decided April 27, 2006.

Before Judges LINTNER, HOLSTON, JR. and GILROY.

*Robert P. Clark* argued the cause for appellant (*Clark & DiStefano,* attorneys; *Mr. Clark,* on the brief).

*John M. Palm* argued the cause for respondent (*Garrigle and Palm,* attorneys; *Mr. Palm,* on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

This appeal involves a dispute between two insurance companies. Plaintiff, Selective Insurance Company (Selective), filed a complaint and order to show cause (OTSC) seeking to confirm an arbitration award in the amount of $77,219.84 entered against defendant, National Continental Insurance Company (National), for reimbursement of Personal Injury Protection (PIP) benefits that Selective paid to its insured Kathryn Kniesler. Following oral argument on Selective's summary application in the Law Division, the judge confirmed $28,365.40 of the award and entered an order modifying the arbitration award accordingly. Selective appeals and we reverse and remand for entry of an order confirming the entire arbitration award against National.

The facts are substantially undisputed. On September 25, 2001, Kniesler was injured when her vehicle was involved in an intersection collision with a dump truck operated by National's insured Jorge Posso, the operator of a commercial vehicle, which was not required to have PIP coverage. National's policy had liability limits of $500,000. On June 4, 2002, National paid Selective $21,634.60 on Selective's property damage subrogation claim.

Kniesler and her husband, Christopher, filed a complaint seeking damages resulting from her personal injuries in the Law Division sometime in 2002.[1]

Selective filed its arbitration claim for PIP benefits against National pursuant to *N.J.S.A.* 39:6A-9.1 on September 22, 2003. At the time, both National and Selective were signatories to Arbitration Forums, Inc.'s (the Forum) binding Personal Injury Protection Subrogation Forum. On October 15, 2003, National filed its response, admitting coverage and liability.[2] National's response also indicated there was a companion suit pending and requested a deferment and notice of a hearing. Paragraph 11 of the Forum's rules and regulations governing personal injury protection arbitration provides in pertinent part:

Arbitration of a controversy may be deferred until all companion claims or suits not subject to arbitration have been disposed of by settlement or otherwise, all parties to the arbitration may agree to waive deferment. . . .

One year from the date of filing with [a Forum's] field office, a deferred case shall be set [for] a hearing and heard unless continuance of the deferment is requested. If a request for a continued deferment is made, the adverse party may challenge the reason for the request. If a challenge is made, a hearing will be held to determine the reason for the deferment. If the panel determines the reason for the deferment is for good cause, the case will be continued on the [Forum's] docket in a deferred status for one year. After the year, it will be placed on the active hearing docket and heard unless the administrator receives a written request for continuance of the deferment for another year.

On October 16, 2003, National's Division Claims Manager, Douglas Bright, wrote a letter to the Forum notifying it of National's intent "to withdraw from the Personal Injury Arbitration Forum in New Jersey." The letter acknowledged that "[i]n accordance with the terms of the Agreement, this withdrawal will be effective sixty (60) days from the date of this correspondence." Bright also expressed that National had "serious concerns" over

---

[1] The complaint, which bore Docket Number L-1487-02 and was filed in Monmouth County, is not provided in the Appellate record. The docket number indicating the complaint was filed in 2002 is provided in the release evidencing the settlement of Knieslers' action.

[2] National's response is date stamped October 20, 2003.

the "adjudication" of New Jersey PIP cases respecting the need for deferments and the Forum's refusal to provide the necessary relief. Accordingly, Bright requested that "any case now pending, or that should be filed within the next sixty days, and in which [National] has requested a deferment due to a companion claim or suit pending, be stayed until we can reach an acceptable resolution to our concerns.... "

The Forum did not respond to Bright's request for a stay. On October 27, 2004, an arbitrator entered the award in favor of Selective.[3] National refused to pay the award and Selective filed its OTSC on December 30, 2004. Meanwhile, on December 13, 2004, National entered into a settlement in the amount of $450,000 with the Knieslers on behalf of its insured. The Knieslers received payment on the settlement from National on December 30.

At oral argument on the OTSC, National asserted that it was not properly before the arbitrator because it had withdrawn from the arbitration agreement with the Forum and was under the presumption that a stay had been granted pursuant to its October 16 request. National also argued that *N.J.S.A.* 39:6A–9.1 limits Selective's recovery to $28,365.40, the available amount remaining in its policy limits. The judge rejected National's argument that it was not properly before the arbitrator, pointing out that the withdrawal request was not effective until sixty days after the October 16 notice and National had received the one-year deferment pursuant to the Forum's rules, which it had requested in its initial response to Selective's notice to arbitrate. Relying on *IFA Insurance Co. v. Waitt,* 270 *N.J.Super.* 621, 637 *A.2d* 941 (App. Div.), *certif. denied,* 136 *N.J.* 295, 642 *A.2d* 1004 (1994), the judge, however, concluded that as a matter of law National could only be held liable to the extent of its policy limits.

On appeal, Selective contends that the judge erred by (1) going beyond the appropriate standard of review for confirming arbitra-

---

[3] The arbitrator's decision indicates a "Date Closed" of October 20, 2004, which is exactly one year after National's response is stamped received.

tion awards and (2) misapplying *IFA* because, at the time the arbitration award was rendered, National had not settled the underlying claim and, therefore, there remained sufficient available limits in its policy to cover the award.

We consider first the applicable standard of review respecting private arbitration. In *Habick v. Liberty Mutual Fire Insurance Co.*, 320 *N.J.Super.* 244, 253, 727 *A.*2d 51 (App.Div.), *certif. denied*, 161 *N.J.* 149, 735 *A.*2d 574 (1999), we held that the review standard announced in *Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc.*, 135 *N.J.* 349, 640 *A.*2d 788 (1994), applied to review PIP arbitrations. Under *Tretina*, the review standard is as follows:

> "Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. [They] can be corrected or modified only for very specifically defined mistakes as set forth in [*N.J.S.A.* 2A:24–9]. If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award."
>
> [*Id.* at 358, 640 *A.*2d 788 (quoting *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 129 *N.J.* 479, 548, 610 *A.*2d 364 (1992) (alterations in original)).]

Pursuant to this standard, only in rare circumstances may a court vacate an arbitration award for public policy reasons, and errors of law or fact made by the arbitrators are not correctable. *Id.* at 357–58, 364, 640 *A.*2d 788; *Ukrainian Nat'l Urban Renewal Corp. v. Joseph L. Muscarelle, Inc.*, 151 *N.J.Super.* 386, 396, 376 *A.*2d 1299 (App.Div.), *certif. denied*, 75 *N.J.* 529, 384 *A.*2d 509 (1977).

In *Habick*, we explained that the more expansive public sector review standard was based on fairness, the public's interest in avoiding violations of law or public policy, and the need to protect the public welfare. *Habick, supra,* 320 *N.J.Super.* at 252, 727 *A.*2d 51. These public policy interests were not implicated when PIP arbitration was brought by an insured against her insurance company, as permitted by *N.J.S.A.* 39:6A–5. *Habick, supra,* 320 *N.J.Super.* at 246, 252–53, 727 *A.*2d 51. Similarly, in the present case, arbitration between two insurance companies, pursuant to *N.J.S.A.* 39:6A–9.1, does not raise the public policy considerations that warrant broader judicial review of public sector arbitration

decisions. If the *Tretina* standard is appropriate for use in arbitrations between insureds and insurers, it is even more appropriate when two insurers are disputing PIP reimbursement.

National does not assert that the arbitrator committed fraud, corruption, or any of the other limited bases permitted by *Tretina* to justify reversal of an award. Instead, it argues that *N.J.S.A.* 39:6A–9.1 confines Selective's recovery to the available limits remaining in the National Policy. It maintains that its payment in the underlying liability case reduced its available limits to $28,365.40. *N.J.S.A.* 39:6A–9.1, provides in pertinent part:

> An insurer ... paying benefits pursuant to ... personal injury protection benefits ... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State.... In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.

As the owner and operator of a commercial vehicle, National's insured qualified as a tortfeasor who was not required to maintain PIP benefits. *See Sherman v. Garcia Constr., Inc.,* 251 *N.J.Super.* 352, 598 *A.*2d 242 (App.Div.1991). Therefore, under the statute, although National's insured is immune from personal liability for PIP reimbursement, National was potentially obligated to reimburse Selective for the PIP benefits paid its insured. *Id.* at 356, 598 *A.*2d 242. The Legislative intent expressed in *N.J.S.A.* 39:6A–9.1 is to require arbitration between insurers, absent their agreement. *N.J. Auto. Full Ins. Underwriting Ass'n v. Liberty Mut. Ins. Co.,* 270 *N.J.Super.* 49, 53, 636 *A.*2d 550 (App.Div.1994). Indeed, Selective was obligated to make "a formal demand for arbitration ... within two years of the filing of the PIP claim in order to satisfy *N.J.S.A.* 39:6A–9.1." *Ibid.*

On appeal, National asserts, as it did in the Law Division, that its letter of October 16 was effective to cancel its participation

in the arbitration agreement and afforded it a stay from the proceedings currently on the docket. We disagree. National did not dispute coverage or liability. Instead, it sought a deferment based upon its knowledge of the pending liability suit against its insured. Thus, the essence of the dispute between National and Selective was the amount National ultimately would be required to pay Selective in light of the pending liability claim against its insured. National, however, did not seek or avail itself of continued deferment in accordance with the provision of the agreement. Beyond that, National never followed up to ascertain whether it had received the requested stay nor did it seek court intervention to either stay arbitration pending resolution of the underlying case or bring a declaratory judgment action naming Selective and the Knieslers to determine how to distribute its remaining policy limits, after it received no response to its request. Contrary to National's contention, the facts here establish and the judge correctly found that it was properly before the arbitrator at the time his decision was rendered.

In *IFA, supra,* 270 *N.J.Super.* at 622, 637 *A.*2d 941, the injured victim received over $30,000 in PIP payments from his carrier. The tortfeasor had a commercial automobile liability policy with $75,000 limits. After the complaint was filed, the tortfeasor's carrier exhausted its policy limits by depositing $75,000 into court in the underlying liability action. The PIP carrier sought reimbursement. The panel held that *N.J.S.A.* 39:6A–9.1 "does not require the commercial tortfeasor's carrier to reimburse the PIP carrier after exhaustion of the liability policy limits where there is no excess policy." *IFA, supra,* 270 *N.J.Super.* at 626, 637 *A.*2d 941.

Selective asserts on appeal that the judge misread *IFA* to provide the injured victim priority over the PIP carrier's right to reimbursement. It maintains that there is no priority and that so long as there are sufficient funds remaining in the available policy limits an insurer asserting an earlier established right to PIP reimbursement must prevail. The decisions supporting Selective's

position include *Knox v. Lincoln General Insurance Co.*, 304 *N.J.Super.* 431, 701 *A.2d* 445 (App.Div.1997), which held the following when dealing with statutory reimbursement:

[C]arriers, whether paying PIP benefits or workers compensation benefits, both have a right to be made whole even though reimbursement may reduce the pool of available insurance coverage to which the claimant ... may look to recovery. The fact that a PIP carrier is given a degree of priority in being reimbursed for PIP payments made to its injured insured is understandable. The Act requires the injured motorist's medical expenses to be paid up-front by the PIP carrier without regard to the motorist's fault even before there has been a determination of ultimate liability for the accident.... Thus, the possibility that PIP reimbursement may be charged against the tortfeasor's liability coverage is a fair trade-off.

All is not lost for the injured claimant. Recovery may be sought under the underinsurance motorist coverage....

Beyond insurance coverage, the injured claimant still has a full cause of action for recovery from the tortfeasor....

[*Id.* at 437, 701 *A.2d* 445 (citation omitted); *see also David v. Gov't Employs. Ins. Co.*, 360 *N.J.Super.* 127, 144, 821 *A.2d* 564 (App.Div.) (in agreement with the holding in *Knox*), *certif. denied*, 178 *N.J.* 251, 837 *A.2d* 1094 (2003).]

National counters, contending that the judge correctly afforded preference to the injured victim. Relying heavily on *Pennsylvania Manufacturers' Association Insurance Co. v. Government Employees Insurance Co.*, 136 *N.J.Super.* 491, 499, 347 *A.2d* 5 (App.Div.1975), *aff'd*, 72 *N.J.* 348, 370 *A.2d* 855 (1977), decided under the prior version of the statute, National asserts that it correctly gave priority to the injured victim because its settlement of the underlying case occurred at about the same time, albeit after Selective received its arbitration award.

In *Pennsylvania Manufacturers' Association*, the PIP carrier instituted a declaratory judgment action to determine the extent of its right of subrogation against the liability carrier because it recognized that the injured victim's pain and suffering damages and its PIP payments were both well in excess of the liability carrier's relatively small policy limits. *Id.* at 495–96, 347 *A.2d* 5. The appellate panel concluded that the overall legislative intent in the No Fault Law was to ensure that "the injured victim's recovery for pain and suffering cannot be diminished by any subrogative claim ... arising out of the payment of PIP benefits." *Id.* at 499, 347 *A.2d* 5. The panel went on to envision the

following circumstances, which, though opposite from the ones here, are nevertheless instructive:

> It is fair and equitable to require a liability carrier to be cognizant of its primary obligation to the injured victim. And if it volunteers payment to the subrogated carrier before the resolution of the claim of the injured party, it cannot assert any right to reduce the available coverage for that injury by the amount of the payment.
>
> [*Id.* at 500, 347 *A.*2d 5.]

National also relies on the rationale used in *Sherman, supra,* 251 *N.J.Super.* at 354, 598 *A.*2d 242. The holding in *Sherman,* however, did not address preference of one claim over the other, but instead was limited to the tortfeasor's immunity from personal liability under *N.J.S.A.* 39:6A–9.1.

> *N.J.S.A.* 39:6A–9.1 undoubtedly affords personal immunity from claims for PIP reimbursement to commercial motor vehicle owners and operators who have insurance coverage. This limitation on PIP reimbursement thus serves to protect small commercial operators from the danger of being rendered insolvent by being held liable for large PIP reimbursement claims that sometimes arise from catastrophic injuries.
>
> [*Id.* at 357, 598 *A.*2d 242.]

We recognize that there is a philosophical dispute concerning whether preference should be given to the injured victim's claim against the tortfeasor's policy. To be sure, it is conceded by Selective that there is an inherent conflict between injured victims who are required to obtain PIP coverage and their first part insurer's right to subrogate against a tortfeasor's liability carrier. The circumstances here, however, do not require us to decide whether one claim should be primary over the other or whether there should be a pro-rata sharing. The issue whether injured parties should be afforded priority over their PIP carrier's statutory right of subrogation is not before us because the Knieslers have been paid in full.

More importantly, the record before us fails in all respects to establish any evidence of fraud, corruption, or similar wrongdoing on the part of the arbitrator that would justify denying confirmation of Selective's arbitration award. Rather, the record evidences a complete failure on the part of National to defend itself by taking the proper steps to confine its liability to the limits of its

policy. National neither sought continued deferments expressly permitted by the Forum's rules and regulations nor, alternatively, court intervention when its request for a stay went unanswered. It is precisely those failures on National's part that render it liable to Selective for the balance of the arbitration award that is beyond its policy limits.

Accordingly, we reverse and remand to permit the trial court to enter a judgment in favor of Selective, confirming the arbitration award in its full amount.