**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1306-18T4

GERALD VESHNEFSKY,
a/k/a CHAIM VESHNEFSKY,
and RUTH VESHNEFSKY,

     Plaintiffs-Respondents,

v.

AARON ZISOW,

     Defendant-Appellant/
     Cross-Respondent,

and

JEWISH LEARNING CENTER
OF MONMOUTH COUNTY, INC.,

     Defendant-Respondent/
     Cross-Appellant.

_____

     Argued February 6, 2020 – Decided July 27, 2020

     Before Judges Nugent and DeAlmeida.

     On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000150-17.

Larry S. Loigman argued the cause for appellant/cross-respondent Aaron Zisow.

Sam Maybruch argued the cause for respondent/cross-appellant Jewish Learning Center of Monmouth County (Arbus, Maybruch & Goode, LLC, attorneys; Sam Maybruch and Matthew Goode, on the brief).

David C. Steinmetz argued the cause for respondents (Steinmetz, LLC, attorneys; David C. Steinmetz, on the brief).

PER CURIAM

This appeal by defendant Rabbi Aaron Zisow and cross-appeal by defendant Jewish Learning Center of Monmouth County, Inc. (JLC) require us to decide whether an arbitration award, twice supplemented, should be upheld as the trial court ordered, or set aside. The award and its amendments were rendered by a Bais Din—a Rabbinical Court that also serves as an arbitral tribunal—in favor of plaintiffs, Rabbi Gerald Veshnefsky and Ruth Veshnefsky. For the reasons that follow, we affirm the award but vacate the trial court's attorney's fee award and remand that issue for further consideration.

I.

The genesis of the parties' dispute is a March 2016 agreement (Agreement) among Rabbi Veshnefsky, JLC, and the Kollel—an organization of students who devote themselves to the study of Jewish religious doctrine and prayer—of

Western Monmouth County (Kollel). Rabbi Veshnefsky was JLC's original registered agent and spiritual leader. He drafted JLC's by-laws and was the Secretary of JLC's Board of Directors. Rabbi Zisow was the Kollel's spiritual leader. He superseded Rabbi Veshnefsky as the spiritual leader of JLC.

The Agreement declares the Kollel will "assume responsibility, leadership, and ownership of the JLC, and commits itself to the financial plan described herein for Rabbi and Rebbitzen Veshnefsky." The terms of the Agreement also provide "[a] grand total of $275,000.00 will be re-paid to Rabbi and Rebbitzen Veshnefsky, or on their behalf, as reimbursement for debts incurred on behalf of the JLC, loans to the JLC, and unpaid salary . . . ." In addition, the Agreement requires payment for balances on Rabbi Veshnefsky's credit cards, which the Rabbi had used to "fund" JLC related expenses. To secure the debt, the Agreement requires that "all [JLC] investment property and the piece annexed out to the investment property will have a lien on it for the above payment." Following are the relevant portions of the Agreement concerning arbitration of disputes:

> 6. Any disputes as to the interpretation of this Agreement shall be submitted to Rabbi Chaim Leiter for determination. All parties agree to abide by any psak (decision) issued by Rabbi Leiter.
> . . . .

> After all of the above terms are agreed to by all parties and the Board of [D]irectors, all parties will forego any claim they may have, both in bais din and in civil court. We, the undersigned, as of the date shown at the top of this Agreement, agree to all of the above conditions and statements. We represent that we have the necessary authority, on behalf of our respective organizations, to enter into this Agreement and to bind each organization to it.

JLC's Board's officers, including the president, Dr. Theodore Lidsky, signed the Agreement on behalf of JLC. Rabbi Zisow signed the Agreement on behalf of the Kollel. Not long afterward, a dispute erupted when the check Rabbi Zisow tendered as the first payment to Rabbi Veshnefsky was returned for insufficient funds. Rabbi Veshnefsky has been paid nothing since.

In accordance with the Agreement, the parties submitted their dispute to Rabbi Lieter. On April 11, 2016, Rabbi Lieter informed the parties their dispute appeared to go beyond the interpretation of their Agreement. The following week, Rabbi Veshnefsky, Ruth Veshnefsky, and Rabbi Zisow entered into an "Agreement to Submit to Arbitration" (The Arbitration Contract). Rabbi Zisow signed the Arbitration Contract without specifying whether he was doing so as an officer or agent of either JLC or the Kollel.

The parties agreed by the terms of the Arbitration Contract "to submit to binding arbitration all the controversies (claims and counterclaims) between the

undersigned Parties, including without limitation fulfillment of agreement regarding [JLC] and all related issues." The parties agreed "that the controversy be heard and determined by Arbitrator of Vaad Hadayanim Rabbinical Court[.]" The Arbitration Contract further provided:

> [T]he Arbitrator may make his award based upon Din Torah, compromise, settlement, or any other way he wishes to reach a decision; that the Arbitrator shall be empowered to issue such intermediate decisions or orders as he deems necessary; that no transcript nor recording of the proceeding need be made; that the Parties waive the right to cross-examination except under the procedures set by the Arbitrator; that the Arbitrator may follow any procedure as they decide; that the Arbitrator may determine evidentiary issues; that the Arbitrator shall be empowered to issue subpoenas for witnesses and the production of documents; that the arbitration may be conducted in whole or in part in a language other than English; that hearings may be held on Sundays and other legal holidays; that it shall be the decision of the Arbitrator as to whether a matter is related to the dispute or not; that the award of Arbitrator shall be in writing and shall be signed by the Arbitrator and need not be acknowledged or notarized to be confirmed or enforced; that the Arbitrator need not explain to the Parties or to anyone else the reasons for their decision.

> WE understand that we have the right to be represented by attorneys and/or other advisors in the arbitration at any time, but that any Party may elect to proceed without an attorney, and the Parties shall have the right to argue for themselves before the Arbitrator. The Parties hereby waive formal notice of the time and place of the arbitration proceeding and consent that the

5

arbitration be held and commence with the jurisdiction of the Arbitrator to continue until a final award be made. The Parties agree that the Arbitrator shall have the right to hear testimony and evidence without the presence of a Party if the Party does not attend a scheduled hearing. In the event that after an award is made a dispute between the Parties arises as to the interpretation of the award, compliance of the Parties, or if a Party motions for reargument due to their claim of a judicial error or new evidence etc., the Parties agree that the Arbitrator shall have binding jurisdiction on the matters, and the Parties authorize the Arbitrator to add to, amend, change, or clarify a decision, to the extent permitted by law. In the event that a Party does not abide by and perform any award or decision rendered by the Arbitrators or seeks to vacate such decision or award, the Parties authorize the Arbitrators to award additional fees and legal costs.

In addition, the parties agreed to "faithfully abide by and perform any interim or final award or decision rendered by the Arbitrator."

On April 18, 2016, the Rabbinical Court of Lakewood issued the following decision:

On the matter of controversies that came before us between the parties: party A is Mr. and Mrs. Chaim Veshnefsky (the plaintiffs); Party B is Mr. A[a]ron [Zisow] (the defendant), with regard to ownership of JLC and the related. After hearing the arguments of the parties and an analysis of their statements and deliberations amongst us, the following Rabbinical Court Ruling was issued by us:

1. The sale of JLC is in effect and Mr. A[a]ron [Zisow] is required to fulfill all that he obligated himself in the

6

executed agreement. Those amounts that are past due are to be paid by him immediately.

2. In addition to the listed amounts, Mr. A[a]ron [Zisow] owes Mr. Chaim [Veshnefsky] the sum of $35.00.

3. In the event there are any differences of opinion on any accounts, it is upon the two parties to prove their claims before Mr. Simon Shicha of Lakewood to determine, and the Rabbinical Court will consult Mr. Simon [Shicha]. His fee shall be equally shared by the two parties.

4. It is upon Mr. Chaim [Veshnefsky] to act within his ability for the sake of harmony in the Manalapan community, and to refrain from interjecting himself in any negotiations with the owners there about the new arrangements there.

Neither Rabbi Zisow nor JLC objected to the award. Nor did they comply with it. About a year later, on May 9, 2017, the Rabbinical Court of Lakewood clarified its ruling. The written clarification states in pertinent part:

1. Pursuant to a certain Agreement between the parties, the change of management and directorship of the Jewish Learning Center of Monmouth County Inc. (JLC) from the Plaintiff to the Defendant is valid and binding. The Defendant, as the Manager and Director of the Jewish Learning Center of Monmouth County Inc. is obligated to fulfill all of his obligations as per the Agreement.

2. According to the payment schedule in the Agreement, the Defendant as the Manager and Director of the Jewish Learning Center of Monmouth County Inc. is obligated to pay the Plaintiff a total of one

7

hundred twenty four thousand six dollars and twenty one cents ($124,006.21) as of June 1, 2017. This is also a personal obligation on the Defendant.

3. As per the Agreement, the Defendant, as the Manager and Director of the Jewish Learning Center of Monmouth County, Inc. shall execute a mortgage in favor of the Plaintiff . . . against the property known as 130 Pinebrook Road, Manalapan, NJ together with the piece annexed thereto.

During the year following the Rabbinical Court's issuance of its clarification, Rabbi Zisow and JLC neither objected to nor complied with the Rabbinical Court's ruling. On June 14, 2018, the Rabbinical Court issued a third ruling. The initial award and first modification had been issued by three members of the Rabbinical Court. One of the members died prior to the Rabbinical Court's June 14, 2018 ruling. During the week preceding the ruling, Rabbi Simcha Roth, apparently representing Rabbi Zisow, objected to the matter proceeding further in the absence of the now-deceased member of the Rabbinical Court.

Rabbi Roth suggested the two current members of the Rabbinical Court had merely assisted the third, who had passed. Rabbi Roth wrote in an email their assistance of the now-deceased member "doesn't in any way give you the powers to continue adjudication of this matter." The Rabbi added: "In fact, the arbitration agreement does not provide for any substitution of arbitrators in the

event of incapacitation or death." The Rabbi ended the email by informing the Rabbinical Court, "[m]y client is prepared to immediately proceed and adjudicate the issues before a mutually agreeable Bis Din."

One of the two remaining members of the Rabbinical Court corrected Rabbi Roth. In a responsive email, the Rabbinical Court member stated: "Your interpretation of the English Arbitration Agreement is not only incorrect it is also irrelevant. The Shtar Barurin refers to the three Dayanim by name and it empowers the remaining Dayanim, in the event that one of the Dayanim are no longer able to serve." In response, Rabbi Roth requested a copy of the Shtar Barurin. The Rabbinical Court member complied with the request and Rabbi Roth thanked him.

The parties have provided in the appellate record a translation of the Hebrew Arbitration Contract. It provides, in part, that the three judges of the Rabbinical Court:

> may reach a decision even if they heard one of the parties without the other's presence; that should one of the parties evade appearance before the court the court may proceed with the case, hear arguments and evidence, question witnesses and decide the case even in that party's absence; that the court's jurisdiction shall remain in force until its decision has been fully implemented; that the court may resolve any dispute that may arise over the decision's implementation, or over its interpretation; the court may also rule in the

event that one party should raise arguments or evidence to reverse its decision; similarly, should the decision (for whatever reason) not resolve all of the topics that were related to the case, the court may resolve these later; that the decision shall follow the opinion of the majority of judges, and the majority may reach a decision even should one judge be removed from the case, and even should one judge be undecided . . . .

The Rabbinical Court's third ruling stated:

On April 18, 2016 the Bais Din (Rabbinic Arbitration Panel) issued its ruling in regards to the disputes between Gerald Veshnefsky and Ruth Veshnefsky (Plaintiff) and Aaron Zisow (Defendant) in regards to their contractual agreements in connection with the Jewish Learning Center of Monmouth County Inc. and associated matters. We clarified our ruling on May 9, 2017. To date, Zisow continues to refuse to abide by our rulings. Pursuant to the Agreement to Arbitrate that provides continued jurisdiction on this matter we issue the following ruling:

ARBITRATION RULING

1. Our ruling dated April 18, 2016 and its clarification dated May 9, 2017 remain in full force and effect against both JLC and Zisow.

2. In addition to the security set forth in Paragraph 3 of our clarification dated May 9, 2017, both Zisow and JLC are directed to grant Plaintiff a mortgage upon any and all real property that each may own.

3. Zisow and JLC shall pay Plaintiff for any attorneys fees . . . whether previously incurred and that may be incurred in the future.

10

4. As Plaintiff's proceedings were commenced in the Superior Court of New Jersey for the purpose of enforcing our rulings, Plaintiff's conduct was in accordance with the Agreement to Submit to Arbitration.

Meanwhile, in July 2017, Rabbi Veshnefesky and Ruth Veshnefesky filed a Chancery Division action seeking to confirm the Rabbinical Court's decision. They moved to proceed summarily. Rabbi Zisow and JLC, represented by the same attorney, filed an answer and counterclaim. Defendants asserted, among other defenses, that Rabbi Zisow had no personal liability; the arbitrators failed to notify defendants of the proposed clarification of the award, and in any event, the clarification was untimely; and, the arbitrators exceeded the scope of their authority. In opposition to plaintiffs' motion to proceed summarily, Rabbi Zisow signed and submitted a certification in which he averred, among other things, that he signed the Arbitration Contract "only in my capacity as an officer of the [JLC] and not as an individual."

In its counterclaim, JLC asserted that during negotiation of the Agreement, Rabbi Veshnefsky made false representations concerning the financial condition and operations of JLC. JLC also asserted that after signing the Agreement, Rabbi Veshnefsky engaged in misconduct that made enforcing

11

the Agreement inequitable. It sought equitable relief, invalidation of the Agreement, and damages.

In January 2018, the trial court granted plaintiffs' motion to dismiss defendants' counterclaim. Rabbi Zisow and JLC were still represented by the same attorney. JLC did not contend Rabbi Zisow had no authority to bind the JLC to the Arbitration Contract, nor did JLC contend it did not participate in the arbitration. Rather, according to the transcript of oral argument on the motion, defendants challenged the timeliness of the modifications of the initial award and argued the facts underlying the counterclaim were not arbitrated because they did not come to light until after the April 2016 arbitration proceeding.

The trial court subsequently granted summary judgment to plaintiffs and entered an order confirming the Rabbinical Court's April 2016, May 2017, and June 2018 awards. The trial court held Rabbi Zisow and JLC jointly and severally liable for the arbitration award. The court directed JLC to execute a mortgage to secure payment of the debt.

In granting summary judgment, the court rejected JLC's argument—made by new counsel for JLC—that Rabbi Zisow had no authority to bind JLC and therefore JLC had no knowledge of the arbitration while it was being conducted. In doing so, the court noted a certification of JLC's former president, Theodore

Lidsky, contradicted JLC's position. Moreover, a certification by JLC's current president, Brian Paul, reflected only his "understanding" of past events rather than his personal knowledge of those events. The court determined Rabbi Zisow had the apparent authority to bind JLC, and JLC ratified its representation by Rabbi Zisow before the Rabbinical Court.

Citing the language in the Arbitration Contract vesting continuing jurisdiction in the Rabbinical Court in the event of a dispute between the parties concerning the interpretation of the award, compliance, or request for reargument, the court determined the parties vested the arbitrators with continued authority to clarify their decision in the event disputes arose. The trial court further determined that the parties' understanding of the Rabbinical Court's continued involvement was born out by their behavior. Last, the court determined the Arbitration Contract empowered the arbitration tribunal to enforce its award.

Concerning the counterclaims, the trial court found that the broad language of the Arbitration Contract, in which the parties agreed "to submit to binding arbitration all controversies (claims and counterclaims)," conferred the Rabbinical Court with the authority to determine any counterclaims asserted by Rabbi Zisow and JLC. Because the counterclaims asserted in their Chancery

A-1306-18T4

Division answer fell within the scope of the matters to be arbitrated, the trial court dismissed defendants' counterclaims.

The court also determined plaintiffs were not required to amend their Chancery Division complaint with respect to the June 2018 Rabbinical Court's clarification of its decision. When the court granted summary judgment to plaintiffs, it also dismissed JLC's motion for reconsideration of its counterclaim. This appeal followed.

## II.

On appeal, Rabbi Zisow groups several arguments under his first point heading that the trial court erred in granting summary judgment. He argues the trial court's determination he had actual or implied authority to bind JLC was made on an inadequate record, in the face of disputed material facts, and without affording him adequate discovery. He argues the trial court should have heard evidence relevant to the counterclaim, notwithstanding the counterclaim had been dismissed, "if only as an offset to his claim." And he argues the trial court erred by awarding plaintiffs' counsel fees.

In his second point heading, Rabbi Zisow argues the trial court should not have confirmed the arbitration award. He contends the two post-award modifications were untimely under New Jersey's version of the Uniform

Arbitration Act (Arbitration Act), N.J.S.A. 2A:23B-1 to -36, no notice was provided to defendants concerning the second modification, and "nothing in the arbitration award . . . shows that the issues raised in the counterclaim were presented to, or acted upon by, the arbitration panel."[1] Rabbi Zisow also argues the JLC did not agree to arbitrate the dispute before the Rabbinical Court of Lakewood and he did not agree to the third modification after one of the three panel members died.

JLC argues the trial court erred by dismissing its motion for reconsideration of its counterclaim. Acknowledging the issue of Rabbi Zisow's authority to bind the JLC to arbitration was not raised in opposition to plaintiffs' initial motion to dismiss the counterclaim, JLC nonetheless argues, "upon receiving the certification of Mr. Paul in connection with the motion for reconsideration, the trial court . . . should have ruled that there was a question of fact . . . and . . . conducted a hearing to determine whether the JLC had . . . authorized the arbitration before the Vaad." JLC also argues—for the first

---

[1] Although the Arbitration Contract provides the parties submit themselves to the jurisdiction of the New Jersey Courts "for any action or proceeding to confirm or enforce a decree of the Arbitrators pursuant to N.J.S.A. 2A:24-1 et seq.," that statute "shall only apply to an arbitration or dispute arising from a collective bargaining agreement or collectively negotiated agreement." N.J.S.A. 2A:24-1.1. The parties do not dispute the Arbitration Act applies to their Arbitration Contract.

time—the arbitration clause is invalid because it does not fairly apprise the parties of their right to file suit in the Superior Court. JLC reiterates the trial court improperly granted plaintiffs' summary judgment in the face of "dueling certifications."

Opposing defendants' appeal, plaintiffs argue there was no question concerning Rabbi Zisow's authority to bind JLC to the Arbitration Contract. They point out that the Rabbi filed a certification "in which Zisow swore under the penalty of perjury that he signed the arbitration agreements on behalf of the JLC." Thus, according to plaintiffs, absent a subsequent certification by Rabbi Zisow alleging "he committed perjury, or explain[ing] that the [certification] was filed under some kind of duress," no genuinely disputed issue of material fact existed.

Plaintiffs add that a competent certification from JLC's former president confirms Rabbi Zisow was authorized to bind JLC. In contrast to this competent certification, Mr. Paul's certification was incompetent because it was not based on his personal knowledge.

Plaintiffs last argue the plain language of the Arbitration Contract demonstrates the parties vested the arbitration tribunal with the power to decide the issues it decided in its initial award and also its subsequent modifications.

A-1306-18T4

III.

A.

Our resolution of the issues raised by the appeal and cross-appeal is guided by well-established principles concerning the arbitration of disputes. "The goal of arbitration is to bring the parties' issues to a final resolution, 'in a speedy, inexpensive, expeditious, and perhaps less formal manner' than full-blown litigation in court culminating in a lengthy trial." Curran v. Curran, 453 N.J. Super. 315, 321 (App. Div. 2018) (quoting Minkowitz v. Israeli, 433 N.J. Super. 11, 132 (App. Div. 2013)). New Jersey statutory and case law as well as their federal counterparts express a "strong preference to enforce arbitration agreements. . . ." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). In fact, arbitration is recognized as a "favored method for resolving disputes." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001). To that end, agreements relating to arbitration should "be read liberally to find arbitrability if reasonably possible." Jansen v. Salomon Smith Barney, Inc., 342 N.J. Super. 254, 257 (App. Div.).

For these reasons, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the matter is arbitrable. Waskevich v. Herold Law, P.A., 431 N.J.

17

Super. 293, 298 (App. Div. 2013) (citation omitted). "Courts have generally read the terms 'arising out of' or 'relating to' [in] a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract. . . ." Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (quoting Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 149 (App. Div. 2008)).

After January 1, 2005, the Arbitration Act "governs an agreement to arbitrate whenever made with the exception of an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement." N.J.S.A. 2A:23B-3(c). Certain terms of the Arbitration Act may be "varied or waived by contract." Fawzy v. Fawzy, 199 N.J. 456, 469 (2009) (citing N.J.S.A. 2A:23B-4); see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 324 (2019). If parties do not contractually vary the terms of the Arbitration Act, then its terms govern the arbitration proceeding. Kimm v. Blisset, LLC, 388 N.J. Super. 14, 28 (App. Div. 2006).

The Arbitration Act vests an arbitrator with broad authority. The authority includes determining "whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is

enforceable." N.J.S.A. 2A:23B-6(c). The Arbitration Act also authorizes the arbitrator to "issue orders for provisional remedies, including interim awards, as the arbitrator finds necessary to protect the effectiveness of the arbitration proceeding and to promote the fair and expeditious resolution of the controversy, to the same extent and pursuant to the same conditions as if the controversy were the subject of a civil action. . . ." N.J.S.A. 2A:23B-8(b)(1).

The Arbitration Act provides the parameters of the arbitration process, N.J.S.A. 2A:23B-15, including that the arbitration be conducted "in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding[,]" and authorizes the arbitrator to "hold conferences with the parties to the arbitration proceeding before the hearing, and, among other matters, determine the admissibility, relevance, materiality, and weight of any evidence." N.J.S.A. 2A:23B-15(a). Under the Arbitration Act, the arbitrator sets "a time and place" for the hearing, may adjourn the hearing, and "may hear and decide the controversy upon the evidence produced [by a party] although a party who was duly notified of the arbitration proceeding did not appear." N.J.S.A. 2A:23B-15(c).

The Arbitration Act authorizes a court to vacate an arbitration award if:

> (1) the award was procured by corruption, fraud, or other undue means;

19

(2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;

(4) an arbitrator exceeded the arbitrator's powers;

(5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of this act not later than the beginning of the arbitration hearing; or

(6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 9 of this act so as to substantially prejudice the rights of a party to the arbitration proceeding.

[N.J.S.A. 2A:23B-23(a)(1) to (6).]

Because the decision to vacate or confirm an arbitration award is a decision of law, our review is de novo. Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010). Nevertheless, the scope of our de novo review is "narrow," Fawzy, 199 N.J. at 470, and "is informed by the authority bestowed on the arbitrator by the Arbitration Act." Manger, 417 N.J. Super. at 376.

From the judiciary's perspective, once parties contract for binding arbitration, all that remains is the possible need to: enforce orders or subpoena issued by the arbitrator, which have been ignored, N.J.S.A. 2A:23B-17(g); confirm the arbitration award, N.J.S.A. 2A:23B-22; correct or modify an award, N.J.S.A. 2A:23B-24, and in very limited circumstances, vacate an award N.J.S.A. 2A:23B-23. If not for this limitation on judicial intervention of arbitration awards, "the purpose of the arbitration contract, which is to provide an effective, expedient, and fair resolution of disputes, would be severely undermined."

[Curran, 453 N.J. Super. at 321 (quoting Minkowitz, 433 N.J. Super. at 134).]

Generally, "errors of law or fact made by the arbitrators are not correctable." Selective Ins. Co. v. Nat'l Cont'l Ins. Co., 385 N.J. Super. 62, 67 (App. Div. 2006) (citing Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 357-58 (1994)). "[T]he judiciary has no role in the determination of any substantive issues that the parties have agreed to arbitrate." Curran, 453 N.J. Super. at 321.

In the matter before us, intertwined with the foregoing principles are those applicable to our review of a trial court's disposition of a controversy on summary judgment. Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). Our function is not "to

21

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)); accord R. 4:46-2(c).

When applying this standard, courts bear in mind that "'unsubstantiated inferences and feelings' are not sufficient to support or defeat a motion for summary judgment." Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011) (quoting Oakley v. Wianecki, 345 N.J. Super. 194, 201 (App. Div. 2001)). Nor are "'[b]are conclusions in the pleadings, without factual support in tendered affidavits . . . .'" Ibid. (alteration in original) (quoting U.S. Pipe & Foundry Co. v. Am. Arbitration Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961)). Rather, a party must support or oppose a summary judgment motion with competent evidence, including certifications "made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify. . . ." R. 1:6-6.

B.

We first address Rabbi Zisow's and JLC's arguments that genuine issues of material fact precluded the trial court from determining Rabbi Zisow was authorized to represent JLC. We disagree that either defendant established a

genuinely disputed issue of material fact concerning that issue. The motion record's undisputed evidence was to the contrary.

When defendants answered the complaint, Rabbi Zisow certified that when he "signed the agreement to arbitrate, that was only in my capacity as an officer of the [JLC] and not as an individual." He certified this was a true statement, and he further certified his awareness "that if any of the foregoing statements made by me are willfully false, I am subject to punishment." Rabbi Zisow submitted no certification in opposition to plaintiffs' summary judgment motion disavowing his previous certification or explaining the apparent inconsistency between the certification he filed after answering the complaint and the position he later asserted in the trial court.

Rabbi Zisow's certified representation he signed the Arbitration Contract on behalf of JLC is confirmed by Theodore Lidsky, JLC's president from 2012 through 2017. In the certification he submitted in support of confirmation of the arbitration award, Mr. Lidsky averred: "In April, 2016 [d]efendant Aaron Zisow by then also a Director of the JLC who was operating the day-to-day functions of the JLC, with my knowledge and permission entered into agreement to arbitrate to resolve the dispute as a representative of the JLC, before a Bais Din, to wit, Rabbinical Court of Lakewood Vaad Hadayanim."

Rabbi Zisow and the JLC contend the certification of Brian Paul, president of the JLC in 2018, presented a genuinely disputed issue of material fact as to Rabbi Zisow's role in the arbitration proceedings. However, Paul's certification was not competent evidence on the motion record. His certification did not establish he was attesting to facts based upon personal knowledge which would have been admissible in evidence. R. 1:6-6. His certification does not even address Rabbi Zisow's certification, which on its face contradicts Mr. Paul's averments.

Rabbi Zisow notes that during oral argument his attorney "proffered" that Theodore Lidsky was ill and he should be permitted to obtain discovery concerning Mr. Lidsky's medical condition. Rabbi Zisow also points out the Lidsky certification was submitted with plaintiffs' reply papers, not in the original papers.

These arguments are unpersuasive. First, a "proffer" is not competent evidence on a summary judgment motion. Petersen, 418 N.J. Super. at 132. Next, the mere fact of an illness does not establish an impairment of one's memory or, for that matter, any other reason bearing on one's competence to file a certification. Last, and perhaps most important, Rabbi Zisow made no effort on the motion record to disavow his previous certification. We thus find no

24

error in the trial court's determination, and our de novo review does not lead us to the conclusion that summary judgment was improvidently granted.

## C.

Rabbi Zisow's arguments that the trial court should have considered the counterclaims warrant little discussion. The Arbitration Contract by its terms encompassed counterclaims. Moreover, it provided that "if a Party motions for reargument due to their claim of . . . new evidence . . . the Parties agree that the Arbitrator shall have binding jurisdiction on the matters, and the Parties authorize the Arbitrator to add to, amend, change, or clarify a decision, to the extent permitted by law." Thus, the Arbitration Contract provided for resolution by the arbitration tribunal of counterclaims, including counterclaims based on new evidence. Defendants have not explained how they discovered the alleged basis for a counterclaim, when they discovered it, or why they could not have presented it to the arbitration tribunal in the years following the tribunal's initial decision. Considering those circumstances, the trial court did not err by refusing to consider the counterclaim.

For the same reasons, we reject JLC's arguments the trial court erred by dismissing their counterclaim and denying their reconsideration motion. JLC also appears to argue the trial court erred by dismissing its counterclaims and

denying the reconsideration motion because there was a factual dispute as to whether Rabbi Zisow represented JLC during the arbitration proceedings. We have previously addressed that issue and there is no need to revisit it.

JLC also attempts to raise for the first time, in the context of its arguments about its counterclaim, that the Arbitration Contract was invalid because it did not adequately inform JLC of its right to seek relief in Superior Court. It is well settled that "our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959). We thus decline to consider the issue.

D.

Rabbi Zisow next argues the arbitration tribunal exceeded its authority by issuing two untimely rulings following its initial award. It is evident from the broad language in the Arbitration Contract—both the English version and the translated Hebrew version—the parties fully intended to have the Rabbinical Court retain jurisdiction until all matters concerning their dispute were resolved. Moreover, the Rabbinical Court's third ruling can be fairly characterized as an

enforcement ruling following Rabbi Zisow's persistent and longstanding refusal to abide by the parties' Agreement and the Rabbinical Court's decision. We also note that if Rabbi Zisow's argument concerning the timeliness of the Tribunal's second and third rulings were accepted, the Tribunal's initial decision would remain intact and Rabbi Zisow would be personally and solely liable to plaintiffs.

IV.

We have considered the parties' remaining challenges to the trial court's decisions and the Rabbinical Court's rulings and have found them to lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

In addition to his arguments challenging the trial court's substantive rulings concerning arbitration, Rabbi Zisow challenges the court's ruling concerning the award of attorney's fees to plaintiffs. We agree the matter must be remanded on that issue.

We reject Rabbi Zisow's argument plaintiffs are not entitled to counsel fees. The Arbitration Contract specifically provides "[i]n the event that a Party does not abide by and perform any award or decision rendered by the Arbitrators or seeks to vacate such decision or award, the Parties authorize the Arbitrators to award additional fees and legal costs." To the contrary, he has attempted to

avoid its decisions by refusing to comply with them, implicitly disavowing a certification he filed with the trial court, and taking conflicting positions concerning his relationship to and representation of the JLC. JLC, too, has refused to fulfill its contractual commitments to plaintiffs, as determined and enforced by the Rabbinical Court.

Nonetheless, plaintiffs' certification in support of the fee application was deficient. Counsel making an application for fees and costs must comply with R. 4:42-9(b), which requires an affidavit addressing the factors enumerated in RPC 1.5(a). Scullion v. State Farm Ins. Co., 345 N.J. Super. 431, 439 (App. Div. 2001). Plaintiffs' counsel did not comply with these requirements. Rather, he submitted a certification attesting to the lump sum fees his firm charged plaintiffs. Accordingly, we vacate that part of the trial court's final order that awarded counsel fees to plaintiffs and remand the matter for consideration by the trial court after plaintiffs submit a proper fee application and defendants have been afforded an opportunity to respond. Plaintiffs may include the fees incurred for opposing this appeal.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1306-18T4